CHARLES LEE PARKER v. STATE OF NORTH CAROLINA
No. 68SC125

(Filed 14 August 1968)

1. Grand Jury § 3— challenge to composition — time of objection

Objection to composition of the grand jury is deemed waived unless raised in apt time by motion to quash the indictment; such a motion may be made as a matter of right up to the time defendant is arraigned and enters his plea.

2. Indictment and Warrant § 15— allowance of motion to quash — discretionary power of court

The presiding judge as a matter of grace has discretionary power to permit the accused to make a motion to quash the indictment after his plea is entered and until the petit jury is sworn and impaneled to try the case on the merits; thereafter the presiding judge has no power at all to entertain a motion to quash the indictment.

3. Grand Jury § 3; Constitutional Law § 29— challenge to racial composition — effect of guilty plea

If an objection to the racial composition of the grand jury is made in apt time, by making a motion to quash before entering a plea, a subsequent plea of guilty does not waive the objection.

4. Grand Jury § 3— racial composition — waiver of objection

Under the criminal procedure of the State, petitioner's objection to the racial composition of the grand jury is deemed waived (1) where petitioner raised it for the first time in post-conviction proceedings commenced approximately three years after entry of his plea of guilty and the judgment sentencing him to life imprisonment and (2) where petitioner was represented in the trial by experienced and competent counsel employed by his family.

5. Constitutional Law § 32— unfamiliarity with criminal procedure — necessity of counsel

The rules of criminal procedure are necessary for an orderly administration of justice, and it is precisely for the reason that defendants in

criminal cases may not be familiar with all of their rights and the means of protecting them that the courts require they be represented by counsel.

**6. Criminal Law § 181— post-conviction review — validity of guilty plea**

In a post-conviction review of the proceedings leading to the petitioner's sentence of imprisonment, there is no merit in the petitioner's argument that his plea of guilty entered in the trial was a product of his prior coerced confession, when there is evidence in the record tending to show (1) that petitioner, in the presence of his mother, had freely acknowledged his guilt to his trial attorney, (2) that petitioner, on the morning following his arrest and within a few minutes after his confession, had told his attorney that no threats or promises had been made to him and that he was not scared, and (3) that petitioner himself had testified that he was questioned only an hour or two on the night of his arrest and that he had refused at that time to disclose his name and the names of his lawyer and his mother.

**7. Constitutional Law §§ 29, 30; Criminal Law § 24— capital cases — right to jury trial — effect of guilty plea**

In view of the rigid court supervision which G.S. 15-162.1 requires before a guilty plea may be entered to a charge of first degree burglary, the interplay of that statute with statutes such as G.S. 14-52, which impose the death penalty where the defendant is convicted of first degree burglary after a plea of not guilty and the jury fails to recommend life imprisonment, does not result in any substantial denial of a defendant's constitutional rights.

**8. Criminal Law § 181— Post-Conviction Hearing Act — purpose**

The purpose of the proceeding under the Post-Conviction Hearing Act, G.S. 15-217, *et seq.*, is not to determine petitioner's guilt or innocence, which matter has already been determined in the trial and judgment which is the subject of the post-conviction review; rather its purpose is to determine whether in the proceedings leading to the conviction there occurred any substantial denial of petitioner's constitutional rights. G.S. 15-217.

**9. Criminal Law § 181— post-conviction hearing — relevancy of evidence — petitioner's guilt or innocence**

Testimony as to petitioner's guilt is not relevant in a post-conviction proceeding; however, its admission in no way prejudices petitioner's opportunity to develop fully the testimony which is relevant to the constitutional issues raised by him, and its admission is at most harmless error.

ON Writ of *Certiorari* to review an order of *Parker, Joseph W., J.,* at the 13 November 1967 Special Civil Session of Superior Court of HALIFAX County.

At the August 1964 Session of Halifax Superior Court petitioner, Charles Lee Parker, pleaded guilty to an indictment for first-degree burglary and was sentenced to life imprisonment. The present proceedings were commenced in 1967 by petition filed under the North Carolina Post-Conviction Hearing Act, G.S. 15-217, *et seq.* Petitioner

challenges the constitutional validity of the judgment sentencing him to prison on two grounds: (1) That the indictment against him was invalid in that members of his race had been systematically excluded from the grand jury which returned it against him and he had not waived this jurisdictional defect; and (2) that his plea of guilty was a product of his prior coerced confession. Hearings were held on this petition in the Superior Court of Halifax County on 13 November and 19 December 1967.

Evidence submitted by petitioner and by the State at the post-conviction hearings indicated the following facts: On Thursday night, 16 July 1964, about 11:00 p.m. the petitioner, Charles Lee Parker, a Negro boy then 15 years old, was arrested by the police officers as he walked into a yard and went up to a door of a house in Roanoke Rapids. On the preceding Sunday night at approximately 11:00 p.m. someone had broken into this same house and had raped a female occupant. Following his arrest petitioner was taken to the police station where he was questioned as to whether he had broken into any houses. He refused to tell his name or where he was from. The questioning continued for an hour or two, after which he was placed in an unlighted cell for the remainder of the night. There was a drinking fountain in the cell, but no water in it. Petitioner was not given anything to eat that night. The following morning he was again questioned for about an hour, at which time he signed a confession. During the night the officers in some manner learned his identity and about 4:30 a.m. the officers went to his home and informed his mother that he had been arrested. Early the following morning the mother employed the services of an attorney in Roanoke Rapids to represent her son. On the same morning the attorney went to the police station and there talked with petitioner who told him he had already confessed to the police. The attorney questioned him as to whether, when he made the confession, he had been threatened in any manner, whether any promises were made to him, and whether he was scared at the time he made the statement. He told his attorney that no threats and no promises had been made and that he was not scared. Petitioner was given drinking water the second time he was interrogated and was given two sandwiches after he had confessed. At the trial in Halifax Superior Court which occurred on 17 and 18 August 1964, the mother was present and the attorney discussed with her and with the petitioner the nature and seriousness of the charge of first-degree burglary against petitioner, and both the mother and the petitioner signed written statements authorizing the entry of a plea of guilty to first-degree burglary. At the time these statements were signed petitioner and his mother

realized that by entering such a plea he would be sentenced to life imprisonment. In petitioner's statement he also acknowledged that he had not been threatened or abused in any manner by any person and that no promises had been made to him if he pleaded guilty to any charge. Prior to imposing sentence, the judge presiding at the trial examined the petitioner and his mother and made a finding that the petitioner understood the import of his plea and that it was made freely and voluntarily. Sentence of life imprisonment was thereupon imposed. Petitioner's attorney at no time discussed with him the racial makeup of the grand juries in Halifax County or the possibility of quashing the bill of indictment.

From order denying any relief, petitioner made application for Writ of *Certiorari,* which was granted.

*T. W. Bruton, Attorney General, and James F. Bullock, Deputy Attorney General, for the State.*

*Norman B. Smith for the petitioner.*

PARKER, J.

At his post-conviction hearing petitioner introduced evidence tending to show a statistical disparity between the racial composition of the adult population of Halifax County as compared with the racial composition of the grand juries of the county at the time of his indictment and for a substantial period prior thereto. He contends that this evidence made a *prima facie* case that members of his race had been systematically excluded from the grand jury which had indicted him, that the State had introduced no competent evidence to rebut such *prima facie* case, and that the court's finding of fact to the effect that there had been no systematic exclusion of Negroes from such jury was not supported by competent evidence. In support of his contention petitioner cites: *Arnold v. North Carolina* 376 U.S. 773, 84 S. Ct. 1032, 12 L. ed. 2d 77; *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870; *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109.

[1-3]   Under the criminal procedure of this State, however, objection to the grand jury is deemed waived unless raised in apt time by motion to quash the indictment. *State v. Rorie,* 258 N.C. 162, 128 S.E. 2d 229. Such a motion may be made as a matter of right up to the time defendant is arraigned and enters his plea. The presiding judge as a matter of grace has discretionary power to permit the accused to make the motion to quash the indictment after his plea is entered and until the petit jury is sworn and impaneled to try the

case on the merits. Thereafter the presiding judge has no power at all to entertain a motion to quash the indictment. *Miller v. State*, 237 N.C. 29, 74 S.E. 2d 513. If the objection is raised in apt time, by making the motion to quash before entering a plea, a subsequent plea of guilty does not waive the objection. *State v. Covington*, 258 N.C. 501, 128 S.E. 2d 827.

[4]    In the present case petitioner did not raise the objection prior to entering his plea of guilty. He raised it for the first time in the post-conviction proceedings commenced approximately three years after entry of his plea of guilty and the judgment sentencing him to life imprisonment. Under the established criminal procedure of this State, petitioner's objection comes too late. G.S. 9-26.

[4, 5]    It may be granted that petitioner, as many other defendants in criminal cases, was not familiar with the rules of criminal procedure. Nevertheless, such rules are necessary for an orderly administration of justice. It is precisely for the reason that defendants in criminal cases may not be familiar with all of their rights and the means of protecting them that we require they be represented by counsel. Petitioner here was represented by experienced and competent trial counsel employed by his family for that purpose.

> "It is inherent in the judicial process that courts must deal with litigants as though they were acting in the persons of their attorneys. For this reason, the law confers upon the attorney for the defense in a criminal case the power to take such steps in matters of practice and procedure as he deems appropriate to protect the interests of the accused, and decrees that the accused is bound by his action as to those matters. . . . It necessarily follows that the attorney for the defense in a criminal action may waive a constitutional right of his client relating to a matter of practice or procedure. . . . The right of a Negro defendant to object to a grand or petit jury upon the ground of discrimination against members of his race in the selection of such jury is waived by failing to pursue the proper remedy." *Miller v. State, supra.*

[4]    In conformity with the decisions of the Supreme Court of North Carolina, we hold that petitioner, acting through his employed attorney, waived any objection to the grand jury by his failure to move in apt time to quash the indictment. Petitioner cites, *contra*, *McNeill v. North Carolina*, 368 F. 2d 313, a decision of the United States Fourth Circuit Court of Appeals.

[6]    In his order denying petitioner relief the superior court judge found as a fact that petitioner had "freely, voluntarily, without

threat, coercion or duress entered a plea of guilty to the offense of first-degree burglary" at the August, 1964 Term of Halifax Superior Court. Petitioner excepts to this finding as not being supported by sufficient evidence. In his brief petitioner's counsel argues that "logic compels that the petitioner's guilty plea be considered a product of his involuntary confession, and that therefore it must be determined that the petitioner's guilty plea was coerced and the Court was without jurisdiction to sentence the petitioner." This argument is valid only if the evidence at the post-conviction hearing would as a matter of law compel the finding of two things: First, that absent the confession the guilty plea would not have been entered; and second, that the confession was in fact involuntary. In our opinion, the evidence does not as a matter of law compel such a finding as to either. As to the first, there may well have been strong evidence to establish defendant's guilt available to the State had the plea of guilty not been entered, and it may have been that petitioner and his trial counsel were aware of such evidence. The record clearly discloses that petitioner, in the presence of his mother freely acknowledged his guilt to his trial attorney. We cannot say as a matter of law that "logic compels" that petitioner's guilty plea was the product of his prior confession to the police. Nor does a careful examination of the entire record, with particular attention being given to petitioner's own testimony, compel the conclusion as a matter of law that petitioner's confession to the police was coerced or otherwise obtained in an unconstitutional manner. There was no prolonged or continuous interrogation by the officers. By his own testimony he was questioned only "an hour or two" on the night of his arrest, at which time he refused to disclose even his name. He was questioned "about an hour" the next morning, when he confessed. He does not contend he was in any way physically abused. He told his attorney, who visited him a few minutes after his confession, that no threats and no promises had been made and that he was not scared.

At the post-conviction hearing petitioner testified that on the night of his arrest he had asked to see his attorney and his mother, but he admits that at that time he refused to tell the officers what his name was, or the name of his mother, or who his lawyer was. At the post-conviction hearing he also testified that on the night of his arrest he was not given anything to eat or drink, but even if true this hardly seems coercive in view of the fact he admitted having had supper that night. At his post-conviction hearing he also testified that prior to his confession the officers had promised to help him as best they could but didn't say what they would do. All of this testimony, that he had asked and been denied the right to see his

lawyer, that he had been denied food and water, and that the offi-cers had made promises to him, was first given by petitioner at his post-conviction hearing more than three years after his arrest. And it is inconsistent with what he himself told his lawyer on the morn-ing following his arrest. The evidence in the record simply does not, at a matter of law, compel a finding that petitioner's confession was involuntary or that in obtaining it the police violated any of his constitutional rights.

[7]     Petitioner also contends that his plea of guilty was involun-tary because of his fear of receiving a death sentence if he had risked a jury trial by a plea of not guilty. He argues that this was an inherently coercive factor which necessarily deprived him of freedom of choice in making his plea, thereby imposing an imper-missible burden upon his exercise of his Fifth and Sixth Amendment rights under the Federal Constitution. *United States v. Jackson,* 390 U.S. 570, 88 S. Ct. 1209, 20 L. ed. 2d 138. The North Carolina Su-preme Court, however, has had occasion recently to point out the material differences in the Federal Kidnapping Act with which the United States Supreme Court was concerned in *Jackson,* and the North Carolina Statutes relating to the death penalty and to the per-missive tender of a plea of guilty. In *State v. Peele,* 274 N.C. 106, filed 14 June 1968, the North Carolina Supreme Court pointed out that:

> "G.S. 15-162.1 is for the benefit of a defendant and may be invoked only on his and his counsel's written application. It pro-vides that the State and the defendant, under rigid court su-pervision, may, without the ordeal of a trial, agree on a result which will vindicate the law and save the defendant's life. As stated in the *Jackson* case, there are 'defendants who would greatly prefer not to contest their guilt.' Practical experience indicates only in extreme cases does the jury fail to recommend life imprisonment rather than the death penalty."

In view of the rigid court supervision which G.S. 15-162.1 requires before a guilty plea may be entered, we hold that the interplay of that statute with statutes such as G.S. 14-52 which impose the death penalty in cases where the defendant is convicted after a plea of not guilty and the jury fails to recommend life imprisonment, does not result in any substantial denial of a defendant's constitutional rights.

[8, 9]     Petitioner also assigns as error the court's admission of evidence relative to petitioner's guilt of the crime for which he had been convicted. At the post-conviction hearing the petitioner, on

cross-examination by the solicitor and over objection by his counsel, freely admitted that he had entered the house which he was charged with having burglarized and there having intercourse with a female occupant who had not been previously known to him. The purpose of the proceeding under the North Carolina Post-Conviction Hearing Act, G.S. 15-217, *et seq.*, is not to determine petitioner's guilt or innocence. That matter has already been determined in the trial and judgment which is the subject of post-conviction review. The purpose of post-conviction review is to determine whether in the proceedings leading to the conviction there occurred any substantial denial of petitioner's constitutional rights. G.S. 15-217. Therefore, testimony as to petitioner's guilt was not relevant in the post-conviction proceedings. However, its admission in no way prejudiced petitioner's opportunity to develop fully the testimony which was relevant to the constitutional issues raised by him and its admission was at most harmless error.

Petitioner has made other assignments of error relating to admission or exclusion of evidence and to the court's failure to rule on objections to evidence. We have examined these carefully but find no prejudicial error.

The judgment is

Affirmed.

CAMPBELL and BROCK, JJ., concur.