STATE OF NORTH CAROLINA v. JOSEPH EUGENE SPENCE AND GLENNWOOD O'NEIL WILLIAMS

No. 658

(Filed 11 December 1968)

**1. Jury § 5— right to unbiased jury**

Each party to a criminal trial must have the opportunity to present his cause to a fair and unbiased jury.

**2. Jury § 7— purpose of challenge to venireman**

The purpose of challenge of a venireman should be to guarantee not only freedom from any bias against the accused, but also from any prejudice against his prosecution.

**3. Constitutional Law § 29; Criminal Law § 135; Jury § 7— death penalty — exclusion of veniremen opposed to capital punishment**

In *Witherspoon v. Illinois*, 391 U.S. 510, the United States Supreme Court held that a sentence of death may not be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for

cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.

4. Constitutional Law § 29; Criminal Law § 135; Jury § 7— death penalty imposed — exclusion of jurors opposed to capital punishment — new trial as to guilt and punishment

In a trial in which defendants were convicted of first degree murder and sentenced to death, the trial court erred in permitting the State to challenge for cause prospective jurors who voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction, and defendants, having aptly objected to the jury on this ground, are entitled to have the verdicts set aside and to have a new trial as to both guilt and penalty.

5. Constitutional Law § 29; Jury § 1— unconstitutional jury — verdict set aside

Where the trial jury was not selected in accordance with defendants' constitutional rights, the verdicts cannot stand but must be set aside.

6. Criminal Law § 126; Constitutional Law § 29— criminal verdict

Only a jury, and not a State or Federal Court, may return a criminal verdict.

7. Criminal Law § 135; Constitutional Law §§ 29, 30— capital punishment — decision of U. S. v. Jackson

It was held in State v. Peele, 274 N.C. 106, that United States v. Jackson, 390 U.S. 570, is not authority for holding that capital punishment may not be imposed under any circumstances in North Carolina.

Parker, C.J., concurring.

Bobbitt, J., concurring in part and dissenting in part.

Sharp, J., joins in opinion of Bobbitt, J.

The defendants Joseph Eugene Spence and Glennwood O'Neil Williams were indicted and tried in the Superior Court of Guilford County (July 11, 1966 Criminal Session) on charges of murder in the first degree. From verdicts of guilty as charged and sentences of death pronounced thereon, they appealed.

After full review, this Court, in a unanimous opinion, held that error was not committed in the trial. The verdicts and judgments were upheld.

The defendants obtained from the Supreme Court of the United States a writ of certiorari to review our decision. The petition for the writ alleged the trial court denied the defendants' constitutional rights to fair trials by the exclusion of veniremen who stated in voir dire examinations they were opposed to capital punishment. The per curiam order to us, dated July 17, 1968, contained the following:

". . . The judgments of the courts below are vacated and the cases remanded for reconsideration in the light of *Witherspoon v. Illinois,* No. 1015, decided June 3, 1968."

We reheard the cases both on briefs and on oral arguments.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General, for the State.*

*George W. Gordon for defendant Spence.*

*Jack W. Floyd for defendant Williams.*

HIGGINS, J.

The directive from the Supreme Court of the United States requires us to reconsider our former decision upholding the jury's verdicts and the Court's sentences. *State v. Spence and Williams,* 271 N.C. 23, 155 S.E. 2d 802. As disclosed by the record, the defendants had objected to the jury on the ground veniremen were successfully challenged by the prosecution because of their conscientious objections to capital punishment. The directive requires us to determine whether the method employed in selecting the jury met the standards set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770.

The record of the trial contains the voir dire examinations of 11 veniremen rejected because of their varying degrees of opposition to capital punishment. We deem it unnecessary to attempt any analysis of these divergent views because of this stipulation in the record:

"A total of 150 veniremen were examined on voir dire; 79 of those examined were successfully challenged for cause by the State because of their stated opposition to capital punishment."

[1] The trial jury was selected in the manner approved by North Carolina case law. The basic concept has been that each party to a trial have opportunity to present his cause to a fair and unbiased jury. He may challenge for cause any juror who is prejudiced against him. His right is not to select a juror prejudiced in his favor, but to reject one prejudiced against him. *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568; *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802; *State v. Bumper* (erroneously designated Bumpers), 270 N.C. 521, 155 S.E. 2d 173 (reversed by the Supreme Court on other grounds); *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453; *State v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229, and cases therein cited. The method of selection likewise appears not to have been in violation of federal rules.

**[2]** According to the Federal Court decisions "the function of challenge is not only to eliminate extremes of partiality on both sides but to assure the parties that the jury before whom they try the case will decide on the basis of the evidence placed before them and not otherwise." The purpose of challenge should be to guarantee "not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the State the scales are to be evenly held." *Swain v. Alabama,* 380 U.S. 202; *Tuberville v. United States,* 303 F. 2d 411 (cert. den. 370 U.S. 946); *Logan v. United States,* 144 U.S. 263; *Hayes v. Missouri,* 120 U.S. 68.

Did the trial court commit error by permitting the prosecution to remove from the venire those who held the views on capital punishment disclosed by the record? In answering this question, the directive requires us to apply the Witherspoon tests.

In 1960 Witherspoon was tried in Cooke County, Illinois for murder. The jury found him guilty and fixed his punishment at death. The jury was selected in accordance with the Illinois statute which provided:

> "In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same."

The Supreme Court of Illinois denied Witherspoon's application for a new trial upon his stated ground that the jury was stacked against him by permitting the State to challenge for cause all who expressed opposition to or scruples against capital punishment.

**[3]** Witherspoon's application for certiorari was allowed by the Supreme Court of the United States. The opinion was filed July 3, 1968. Because of the impact the decision will have on trials for capital felonies in this State, we quote extensively from the opinion and the footnotes thereto:

> "The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. For the State of Illinois did not stop there, but authorized the prosecution to exclude as well all who

said that they were opposed to capital punishment and all who indicated that they had conscientious scruples against inflicting it.

*        *        *

If the State had excluded only those prospective jurors who stated in advance of trial that they would not even consider returning a verdict of death, it could argue that the resulting jury was simply 'neutral' with respect to penalty. But when it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality. . . .

*        *        *

A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror. But a jury from which all such men have been excluded cannot perform the task demanded of it. . . ."

Attached to the Court's opinion are the following footnotes:

". . . The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. . . .

*        *        *

We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*. Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the conviction, as opposed to the *sentence*, in this or any other case.

We have considered the suggestion, advanced in an *amicus curiæ* brief filed by 24 States on behalf of Illinois, that we should 'give prospective application only to any new constitu-

tional ruling in this area,' particularly since a dictum in an 1892 decision of this Court approved the practice of challenging for cause those jurors who expressed 'conscientious scruples in regard to the infliction of the death penalty for crime.' *Logan v. United States*, 144 U.S. 263, 298. But we think it clear, *Logan* notwithstanding, that the jury-selection standards employed here necessarily undermined 'the very integrity of the . . . process' that decided the petitioner's fate, see *Linkletter v. Walker*, 381 U.S. 618, 639, and we have concluded that neither the reliance of law enforcement officials, cf. *Tehan v. Shott*, 382 U.S. 406, 417; *Johnson v. New Jersey*, 384 U.S. 719, 731, nor the impact of a retroactive holding on the administration of justice, cf. *Stovall v. Denno*, 388 U.S. 293, 300, warrants a decision against the fully retroactive application of the holding we announce today."

The Court concludes:

". . . Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. . . ."

[4] The stipulation and certain of the voir dire examinations force us to conclude that veniremen were successfully challenged by the prosecution upon the ground that they were opposed to capital punishment and had religious or conscientious scruples against its infliction. A jury so selected did not meet the test laid down in Witherspoon. In its "light" the defendants were entitled to have their challenge to the jury sustained. The challenge was made in due time and was disallowed. The defendants are entitled to have the verdicts set aside.

We have considered and rejected the suggestions that: (1) under Witherspoon the verdicts should not be set aside; (2) only the death penalty should be eliminated; and (3) the cases should be remanded to the Superior Court of Guilford County for the imposition of life imprisonment sentences.

[5, 6] The Supreme Court of the United States has set aside the judgments. We are directed to pass on the legal composition of the trial jury. The indictments for first degree murder, and the defendants' pleas of not guilty, are not disturbed by Witherspoon or any other authority. If the jury verdicts — guilty as charged — are permitted to stand, the only judgment which the Superior Court has authority to enter is a judgment of death. Having concluded the trial

jury was not selected in accordance with the defendants' constitutional rights, as set out in Witherspoon, we conclude the verdicts cannot stand. They must be set aside. When that is done, the defendants stand again before the court charged with murder in the first degree. Their pleas of not guilty raise jury issues. Neither the State nor Federal Courts are authorized to enter verdicts. Only a jury may return a verdict. *Duncan v. Louisiana,* 391 U.S. 145, 20 L. Ed. 2d 491.

[7]    This Court has already held, in *State v. Peele, supra,* that *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138 (decided April 8, 1968) is not authority for holding capital punishment is abolished altogether in North Carolina. The Court said: "Jackson is not authority for holding the death penalty in North Carolina may not be imposed under any circumstances for the crime of rape." The concurring opinion in Peele states: ". . . This appeal does not present for decision whether *United States v. Jackson, supra,* invalidates the death penalty under present North Carolina statutes." It is now argued in this case that the quoted sentence in *Peele* was dictum. Unless the question was directly presented for decision in *Peele,* the dictum contention is correct. If, on the other hand, it was presented and necessary to a decision, the dictum contention is not correct. Peele was indicted for the rape of a female child 10 years of age. Upon arraignment, and before plea, defense counsel filed this motion.

> "The State has attempted to indict the defendant for the capital offense of rape under G.S. 14-21, which offense, upon conviction, is punishable by death except that should the defendant enter a plea of guilty under G.S. 15-162.1 and have such plea accepted by the State . . . defendant could thereby avoid the risk of a death penalty . . . that both G.S. 14-21 and G.S. 15-162.1 are unconstitutional.
>
> 4. That G.S. 15-162 by itself or construed together with G.S. 15-162.1 and G.S. 14-21 is unconstitutional for the reason that G.S. 15-162 compels an affirmative response if the risk of the death penalty for maintaining one's silence upon arraignment is to be avoided.
>
> WHEREFORE, defendant prays that the indictment be quashed for the reasons set forth above."

The Court denied the motion to quash on all grounds alleged. The defendant took Exceptions 2, 3 and 4. The defendant's brief listed as the first question involved: "1. Did the Court err in failing to allow defendant's motion to quash the indictment for the rea-

son that G.S. 14-21 is unconstitutional as shown by Exception No. 4, R. 20?" Three other questions were discussed in the brief. One-half of the defendant's brief in the *Peele* case was devoted to the discussion of Question No. 1 and the basis of the discussion was the ruling of the Supreme Court of the United States in *Jackson.* It must be remembered that in order to proceed to judgment in a criminal case, the trial court must acquire jurisdiction of the offense and of the offender. Jurisdiction of the offense is acquired by formal accusation (warrant or indictment). Jurisdiction of the offender is acquired by arrest and arraignment before the court. If the defendant, upon arraignment, challenges the validity of the indictment as Peele did, the first inquiry of the court must relate to the validity of the indictment. It must be found to be valid before the court may proceed further. The defendant Peele argued the ruling in *Jackson* abolished capital punishment under North Carolina statutes and that the bill charging the capital offense should be quashed on that ground. So, the question was directly presented and decided in *Peele.*

The contention is again advanced that capital punishment is abolished in North Carolina, a contention which was rejected in

In the present review, we are ordered to examine the method of jury selection. The directive required us to reconsider in the light of *Witherspoon.* We go out of our way if we attempt to go beyond that directive. We have the right to assume, and act on the assumption, that our reconsideration should begin and end on the question of jury selection, which was the sole question involved in *Witherspoon.* The decision in *Jackson* was two months old when we were ordered to reconsider *Spence and Williams.* If the high court intended for us to review the case in the light of *Jackson,* the directive should and no doubt would have included *Jackson* along with *Witherspoon.* *Peele.*

We have concluded the jury which convicted Spence and Williams was not selected according to their constitutional rights as set forth in *Witherspoon.* Although the defendants are indicted for having committed a most horrible crime, they cannot be executed and should not be imprisoned for that crime until a jury, selected in accordance with their constitutional rights, has convicted them. The State has waived neither its right nor its duty to require them to answer the charge of murder in the first degree. To that end we order a

New trial.

PARKER, C.J., concurring:

Every man knows that in criminal law a judgment of a court of criminal jurisdiction formally declaring to the accused the legal consequences of his guilt must be based upon a conviction or upon a plea of guilty or a plea of *nolo contendere* to the charge against him. *S. v. Thompson*, 267 N.C. 653, 148 S.E. 2d 613; *S. v. Griffin*, 246 N.C. 680, 100 S.E. 2d 49; 21 Am. Jur. 2d Criminal Law § 525 (1965); 24 C.J.S. Criminal Law § 1556 (1961). The defendants, Spence and Williams, were indicted and tried in the Superior Court of Guilford County on charges of murder in the first degree. They were found guilty as charged with no recommendation that their sentences be imprisonment for life in the State's Prison. On appeal this Court held that no error was committed in the trial, and the verdicts and judgments were upheld. 271 N.C. 23, 155 S.E. 2d 802.

According to the verdicts the North Carolina statute G.S. 14-17 provides for a mandatory sentence of death. There was no conviction of murder in the first degree with a recommendation by the jury for imprisonment for life in the State's Prison. G.S. 14-17.

On appeal the Supreme Court of the United States remanded this case below with an order that the judgment in it should be vacated and the case is remanded for consideration in the light of *Witherspoon v. Illinois*, No. 1015, decided June 3, 1968. In the light of the *Witherspoon* decision, which in effect overruled the highest courts of 35 states in the Union, *S. v. Childs*, 269 N.C. 307, 152 S.E. 2d 453; Annot., 48 A.L.R. 2d 563; and the cases of *Tuberville v. United States*, 303 F. 2d 411, cert. den. 307 U.S. 946, 8 L. Ed. 2d 813, and *United States v. Puff*, 211 F. 2d 171, cert. den. 347 U.S. 963, 98 L. Ed. 1106, we have ordered a new trial because of alleged infirmity in the selection of the jury under the *Witherspoon* decision. In my opinion, the case cannot be remanded for new judgments of life imprisonment because there is no verdict and no plea to support life imprisonment.

Until recent years the infliction of the death penalty in a proper case by the State has not been questioned. In my judgment, the opinion of the Supreme Court of the United States in *United States v. Jackson*, 390 U.S. 750, 20 L. Ed. 2d 138, does not abolish the death penalty under the applicable North Carolina statutes. In the majority opinions in the *Witherspoon* case and the *Jackson* case, broad, comprehensive statements of law have been made which make it difficult to determine precisely and definitely what the majority opinions hold. This is illustrated by the divergent views expressed by members of the Court in the instant case. If a majority of the

Supreme Court of the United States is determined to abolish the death penalty in this country by judicial decision and in defiance of the united wisdom of their predecessors on that Court since its inception until the last few years, in my opinion, they should come out and definitely and plainly say so instead of leaving the law in the state of uncertainty and confusion that, in my opinion, exists today. If the death penalty in a proper case is to be abolished in this country, in my opinion, it should be done by a vote of the people or by their duly elected representatives. I concur in the majority opinion in this case.

BOBBITT, J., concurring in part and dissenting in part:

Joseph Eugene Spence and Glenn O'Neil Williams, in separate indictments, were charged with the murder of Alton Artamous Maynard. The cases were consolidated for trial. As to each defendant, the jury returned a verdict of guilty of murder in the first degree and did not recommend that the punishment be imprisonment for life. In accordance with these verdicts and the provisions of G.S. 14-17, the trial judge, as to each defendant, pronounced a judgment imposing a death sentence. Upon appeal, this Court, as set forth fully in the opinion of Parker, C.J., found nothing in any of defendants' assignments of error which "would justify another trial as to either defendant," and upheld the verdicts and judgments. *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802.

Defendants filed a petition with the Supreme Court of the United States for a writ of *certiorari* to review the decision of this Court. The petition sets forth eight specific alleged violations of their constitutional rights. It was asserted *inter alia* that each had been denied "his constitutional right to trial by a jury of his peers when fifty-two per cent of the veniremen drawn are disqualified from serving on his jury merely because of a stated reluctance to return a death verdict."

Pending action on defendants' petition, the Supreme Court of the United States, on June 3, 1968, decided *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. Petitions for *certiorari* had been filed in *Jessie Ellison, Petitioner, v. Texas,* and in *Robert Eddie Louis Jackson, Petitioner, v. George J. Beto, Director, Texas Department of Corrections.* On June 17, 1968, the Supreme Court of the United States in a *per curiam* order, applicable to the three cases, granted "the petitions for writs of certiorari," and ordered: "The judgments of the courts below are vacated and the cases re-

manded for reconsideration in the light of *Witherspoon v. Illinois.*" 392 U.S. 649, 20 L. ed. 2d 1350, 88 S. Ct. 2290.

In *Witherspoon v. Illinois, supra,* the Supreme Court of the United States was reviewing on *certiorari* the decision of the Supreme Court of Illinois in *People v. Witherspoon,* 36 Ill. 2d 471, 224 N.E. 2d 259 (1967), which had affirmed a Circuit Court's dismissal of a petition filed by Witherspoon under the Illinois Post-Conviction Hearing Act.

In 1960, a jury had convicted Witherspoon of the murder of a police officer and had fixed his penalty at death. This judgment was affirmed by the Supreme Court of Illinois. *People v. Witherspoon,* 27 Ill. 2d 483, 190 N.E. 2d 281 (1963). In prior Illinois Post-Conviction and Federal Habeas Corpus proceedings the relief sought by Witherspoon had been denied. The ground on which Witherspoon sought relief in the proceedings now under consideration was asserted for the first time in the petition filed therein.

In granting *certiorari,* the Supreme Court of the United States limited consideration to the following question: "Whether the operation of the Illinois statute providing that the state could challenge for cause all prospective jurors who were opposed to, or had conscientious scruples against, capital punishment deprived the petitioner of a jury which fairly represented a cross section of the community, and assured the State of a jury whose members were partial to the prosecution on the issue of guilt or innocence, in violation of the petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution." *Witherspoon v. Illinois,* 389 U.S. 1035, 19 L. ed. 2d 822, 88 S. Ct. 793.

In *Witherspoon,* Mr. Justice Stewart, expressing the views of five members of the Court, stated: "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." Also, Mr. Justice Stewart stated: "We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was. . . . It

has not been shown that this jury was biased with respect to the petitioner's guilt." Footnote 21 of the majority opinion includes the following: "Nor does the decision in this case affect the validity of any sentence other than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case." The separate opinion of Mr. Justice Douglas, who considered the decision too narrow, epitomizes the holding of the majority in these words: "Although the Court reverses as to penalty, it declines to reverse the verdict of guilt rendered by the same jury."

I reject the idea that jurors are "conviction-prone" simply because they have no conscientious or religious scruples against capital punishment. My experience as a trial judge convinces me they are not. The correctness of this view is demonstrated in *Bumper v. North Carolina,* 391 U.S. 543, 20 L. ed. 2d 797, 88 S. Ct. 1788.

It is noted that Mr. Justice Black, Mr. Justice Harlan and Mr. Justice White dissented from the decision in *Witherspoon.*

The clear decision of the majority in *Witherspoon* was (1) that the sentence of death could not be carried out, and (2) that the verdict establishing Witherspoon's guilt was not disturbed. The decision of the Supreme Court of Illinois (1967), which had affirmed in *all* respects the Circuit Court's dismissal of Witherspoon's post-conviction petition, was "Reversed." The word, "Reversed," when considered in context with the opinion, signifies only that the Supreme Court of Illinois, upon remand of the case, would render decision in conformity with the opinion of Mr. Justice Stewart.

The Supreme Court of the United States, in its *per curiam* order of June 17, 1968, *vacated* the judgment (decision) of this Court (*State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802) and remanded the case to us for reconsideration in the light of *Witherspoon.* Upon reconsideration, it is clear that, in accord with our prior decisions but contrary to the law as declared in *Witherspoon,* veniremen were excluded for cause "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Thus, under *Witherspoon,* the defendants cannot "constitutionally be put to death at the hands of a tribunal so selected."

Under *Witherspoon,* the trial judge cannot exclude prospective jurors *for cause* simply because they voice general objections to the death penalty or express conscientious or religious scruples against the infliction of capital punishment. If, contrary to my opinion, pun-

ishment by death is permissible *under our present statutes,* it would seem a futile gesture for the prosecutor to ask jurors who have conscientious or religious scruples against capital punishment to exercise their "unbridled" discretion in favor of a verdict that would require the pronouncement of a death sentence.

I concur in the Court's holding that the jury which tried defendants "did not meet the test laid down in *Witherspoon.*" I dissent from the conclusion that this entitled defendant to a new trial *as to guilt* and *as to penalty.* In my opinion, for reasons stated below, the verdicts of guilty of murder in the first degree should not be disturbed; the death sentences should be vacated; and the case should be remanded for the pronouncement of judgments of life imprisonment.

Article XI, Sec. 2, of the Constitution of North Carolina, provides: "The object of punishments being not only to satisfy justice, but also to reform the offender, and thus prevent crime, murder, arson, burglary, and rape, and these only, may be punishable with death, if the General Assembly shall so enact."

North Carolina statutes containing provisions for punishment by death are quoted below.

G.S. 14-17 provides: "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: *Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury.* All other kinds of murder shall be deemed murder in the second degree, and shall be punished with imprisonment of not less than two nor more than thirty years in the State's prison."

G.S. 14-21 provides: "Every person who is convicted of ravishing and carnally knowing any female of the age of twelve years or more by force and against her will, or who is convicted of unlawfully and carnally knowing and abusing any female child under the age of twelve years, shall suffer death; *Provided, if the jury shall so recommend at the time of rendering its verdict in open court, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury.*"

G.S. 14-52 provides: "Any person convicted, according ·to due

course of law, of the crime of burglary in the first degree shall suffer death: *Provided, if the jury when rendering its verdict in open court shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury.* Anyone so convicted of burglary in the second degree shall suffer imprisonment in the State's prison for life, or for a term of years, in the discretion of the court."

G.S. 14-58 provides: "Any person convicted according to due course of law of the crime of arson shall suffer death: *Provided, if the jury shall so recommend, at the time of rendering its verdict in open court, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury.*"

The italicized portion of each of the quoted statutes is incorporated therein by Chapter 299 of the Session Laws of 1949. Under the 1949 amendments, as interpreted by this Court, whether a jury, upon finding a defendant guilty of murder in the first degree, or of rape, or of burglary in the first degree, or of arson, shall recommend that the punishment be imprisonment for life in the State's prison, is a matter within the "unbridled" discretion of the jury. *State v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212; *State v. Denny,* 249 N.C. 113, 105 S.E. 2d 446. The opinion in *McMillan* states: "No conditions are attached to, and no qualifications or limitations are imposed upon, the right of the jury to so recommend."

Although not the basis for my conclusion herein, reference is made to the opinion of Tobriner, J., with whom Traynor, C.J., and Peters, J., concurred, in the decision of the Supreme Court of California in *In re Anderson,* 73 Cal. Rptr. 21, 447 P. 2d 117, filed November 18, 1968. In this opinion, Justice Tobriner concurs in the majority (six) view that *Witherspoon* required that the Court "set aside the penalty previously imposed in the two cases now before us." In addition, it expresses the minority (three) view that due process of law and the equal protection of the laws is denied when the issue of life or death is left to the "unbridled" discretion of a jury. The Chief Justice and six Associate Justices comprise the Supreme Court of California.

G.S. 15-162.1, the codification of Chapter 616 of the Session Laws of 1953, provides:

"(a) Any person, when charged in a bill of indictment with the felony of murder in the first degree, or burglary in the first degree, or arson, or rape, when represented by counsel, whether employed by the defendant or appointed by the court under G.S. 15-4 and 15-5, may, after arraignment, tender in writing, signed by such per-

son and his counsel, a plea of guilty of such crime; and the State, with the approval of the court, may accept such plea. Upon rejection of such plea, the trial shall be upon the defendant's plea of not guilty, and such tender shall have no legal significance whatever.

"(b) In the event such plea is accepted, the tender and acceptance thereof shall have the effect of a jury verdict of guilty of the crime charged with recommendation by the jury in open court that the punishment shall be imprisonment for life in the State's prison; and thereupon, the court shall pronounce judgment that the defendant be imprisoned for life in the State's prison.

"(c) Unless and until the State accepts such plea, no reference shall be made in open court at the time of arraignment or at any other time to the tender or proposed tender of such plea; and the fact of such tender shall not be admissible as evidence either for or against the defendant in the trial or at any other time and place. The defendant shall have the right to withdraw such plea, without prejudice of any kind, until such time as it is accepted by the State."

It is the province of the General Assembly to determine whether, as a matter of State policy, all or any of the crimes of murder, arson, burglary and rape, should be punished by death. I do not suggest the General Assembly is prohibited by the Constitution of the United States from providing for the punishment by death of a defendant who is convicted of (1) murder in the first degree, or (2) rape, or (3) burglary in the first degree, or (4) arson. Indeed, I perceive no constitutional defect in the provisions of the quoted statutes prior to the 1949 amendments and the enactment of Chapter 616 of the Session Laws of 1953. Our statutes, prior to the 1949 amendments, declared *as the policy of the State of North Carolina* that each of the four felonies referred to in Article XI, Sec. 2, of our Constitution, was punishable by death. Subsequent to the enactment of the 1949 amendments, whether the punishment was to be death or life imprisonment was to be determined by juries, case by case, rather than by a law applicable alike to all who committed these crimes. If provisions for capital punishment are to be retained in respect of any or all of these so-called capital felonies, constitutional pitfalls would be avoided if the provisions of the 1949 amendments and the provisions of G.S. 15-162.1 were repealed. However, these are matters for legislative consideration and determination.

My dissent from that portion of the Court's decision which sets aside the verdicts and orders a new trial is based on the authority and underlying reasoning of the Supreme Court of the United States in *United States v. Jackson*, 390 U.S. 570, 20 L. ed. 2d 138, 88 S.

Ct. 1209, decided April 8, 1968. In my view, the death penalty provisions of our present statutes, when considered in the light of *Jackson*, are invalid.

In *Jackson*, the Supreme Court of the United States held *the death penalty provision* of the Federal Kidnapping Act (18 U.S.C. § 1201(a)) *invalid* because it imposed an impermissible burden upon an accused's exercise of his Fifth Amendment right not to plead guilty and his Sixth Amendment right to demand a jury trial. The remainder of the statute, the death penalty provision being separable, was held valid. Six of the nine members of the Supreme Court of the United States joined in the *Jackson* decision. Two, Mr. Justice Black and Mr. Justice White, dissented. Mr. Justice Marshall took no part in the consideration or decision of the case.

In *Pope v. United States*, 392 U.S. 651, 20 L. ed. 2d 1317, 88 S. Ct. 2145, decided June 17, 1968, the Supreme Court of the United States, based on its decision in *Jackson*, held *the death penalty provision* of the Federal Bank Robbery Act (18 U.S.C. § 2113(e)) was invalid but the remainder of the statute, the death penalty provision being separable, was valid. Seven of the nine members of the Supreme Court of the United States joined in this decision. Mr. Justice Black and Mr. Justice White dissented.

In *Jackson*, a Federal District Court in Connecticut dismissed the count in the indictment charging a violation of the Federal Kidnapping Act which, in pertinent part, provides: "Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnapped . . . and held for ransom . . . or otherwise . . . shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed." On the basis of these quoted provisions, the district court held the entire Act unconstitutional and quashed the portion of the indictment that charged a violation thereof. *United States v. Jackson*, 262 F. Supp. 716 (D. Conn. 1967). On direct appeal by the Government, the Supreme Court of the United States reversed the judgment of the district court and remanded the case for further proceedings consistent with its opinion. Mr. Justice Stewart closed his opinion for the Court with these words: "Thus the infirmity of the death penalty clause does not require the total frustration of Congress' basic purpose — that of making interstate kidnapping a federal crime. By holding the death penalty clause of the Federal Kidnapping Act unenforceable, we leave the statute an operative whole, free of any constitutional

objection. The appellees may be prosecuted for violating the Act, but they cannot be put to death under its authority."

The Supreme Court of the United States has held (1) "that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States," *Malloy v. Hogan,* 378 U.S. 1, 12 L. ed. 2d 653, 84 S. Ct. 1489, and (2) "that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which — were they to be tried in a federal court — would come within the Sixth Amendment's guarantee," *Duncan v. Louisiana,* 391 U.S. 145, 20 L. ed. 2d 491, 88 S. Ct. 1444. The question is whether our statutes contain the constitutional infirmity that caused the Supreme Court of the United States to declare invalid the death penalty provision of the Federal Kidnapping Act.

These excerpts from the opinion of Mr. Justice Stewart state the basis of· decision in *Jackson.*

(1) "Under the Federal Kidnapping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die. Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial."

(2) "It is no answer to urge, as does the Government, that federal trial judges may be relied upon to reject coerced pleas of guilty and involuntary waivers of jury trial. For the evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. Thus the fact that the Federal Kidnapping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily. The power to reject coerced guilty pleas and involuntary jury waivers might alleviate, but it cannot totally eliminate, the constitutional infirmity in the capital punishment provision of the Federal Kidnapping Act."

The Federal Kidnapping Act, as construed in *Jackson,* provides

the death penalty shall be imposed *if* the jury so recommends. Our statutes provide the death penalty shall be imposed *unless* the jury recommends life imprisonment. If there be any real difference, it would seem that the pressure upon a defendant to enter a plea that will avoid "the risk of death" would be greater under our statutes.

This difference is noted. In North Carolina, certainly in respect of all felony cases, a defendant cannot plead not guilty, waive a jury trial and have his guilt determined by the trial judge. Article I, Section 13, of the Constitution of North Carolina; *State v. Camby,* 209 N.C. 50, 182 S.E. 715, and cases cited. (Note: Prior to the adoption of G.S. 15-162.1, the court would not under any circumstances accept a plea of guilty of murder in the first degree. *State v. Blue,* 219 N.C. 612, 14 S.E. 2d 635; *State v. Simmons,* 236 N.C. 340, 72 S.E. 2d 743.) Rule 23(a) of the Federal Rules of Criminal Procedure provides: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing *with the approval of the court and the consent of the Government.*" (Our italics.) Hence, in federal prosecutions, a defendant has no absolute right to waive jury trial and have his guilt determined by a judge rather than by a jury.

Our statutes provide that the tender by a defendant of a plea of guilty to a capital offense has no legal significance unless and until the tendered plea is accepted for the State by the solicitor (our prosecuting attorney) with the approval of the presiding judge. Rule 11 of the Federal Rules of Criminal Procedure provides: "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Hence, a defendant in a federal prosecution cannot require acceptance of his plea as a matter of right.

In *Jackson,* Mr. Justice Stewart states: "It is true that a defendant has no constitutional right to insist that he be tried by a judge rather than a jury, *Singer v. United States,* 380 U.S. 24, 13 L. ed. 2d 630, 85 S. Ct. 783, and it is also true 'that a criminal defendant has (no) absolute right to have his guilty plea accepted by the

court.' *Lynch v. Overholser*, 369 U.S. 705, 719, 8 L. ed. 2d 211, 220, 82 S. Ct. 1063."

In my view, the grounds on which the Supreme Court of the United States invalidated the death penalty provision of the Federal Kidnapping Act apply with equal force to our statutes and invalidate the death penalty provisions thereof. I am fully aware of the force and impact of this conclusion. However, in my judgment, under our present statutes, no sentence of death can be upheld as valid, and a trial ending in a death sentence is a futile expenditure of time, money and human resources. In any event, the question should be drawn into sharp focus and settled definitively by the Supreme Court of the United States as soon as possible.

The Court's opinion in *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568, after setting forth differences between the provisions of the Federal Kidnapping Act and the North Carolina Statutes codified as G.S. 14-21 and G.S. 15-162.1, expresses the view "that *Jackson* is not authority for holding the death penalty in North Carolina may not be imposed under any circumstances for the crime of rape." In my opinion, then and now, the statement was dictum, unnecessary to decision of the question presented by that appeal. Peele pleaded not guilty. The jury convicted him of rape and recommended that his punishment be imprisonment for life. In accordance with the verdict, judgment of life imprisonment was entered. The validity of a death penalty was not involved. *Jackson* was relevant to the factual situation under consideration in *Peele* only as authority for the proposition that the death penalty provision, *if invalid*, was separable; and that, since the felony of rape existed as theretofore, the motion to quash the indictment was properly overruled.

The Court of Appeals in *Parker v. State*, 2 N.C. App. 27, 162 S.E. 2d 526, reviewing on *certiorari* a judgment dismissing a post-conviction petition, cited and quoted from *State v. Peele, supra,* and expressed views in accordance with the expressions in *Peele*. The decision of the Court of Appeals in *Parker v. State, supra,* under G.S. 7A-28 and G.S. 7A-31, was not subject to further review by this Court. In my view, G.S. 7A-28 and G.S. 7A-31 should be amended promptly to the end that decisions of the Court of Appeals in post-conviction proceedings will be subject to review by this Court. Frequently, as in *Parker v. State, supra,* most serious constitutional questions are presented for decision in post-conviction proceedings.

South Carolina and New Jersey have statutory provisions similar to ours. Confronted by *Jackson*, the Supreme Court of South Car-

olina, in *State v. Harper*, ...... S.C. ......, 162 S.E. 2d 712 (1968), and
the Supreme Court of New Jersey, in *State v. Forcella*, 52 N.J. 263,
245 A. 2d 181 (1968), held unconstitutional and invalid statutes
similar to our G.S. 15-162.1 and retained as valid their statutory pro-
visions providing for the death penalty. I perceive no basis for de-
claring G.S. 15-162.1 unconstitutional and invalid. The policy de-
cision is for the General Assembly. The General Assembly must de-
cide whether the death penalty is to be retained by statutory amend-
ments involving the repeal of G.S. 15-162.1 or whether our statutory
provisions are to be so modified as to provide for punishment by life
imprisonment when a person is *convicted* or *pleads guilty* to one of
the crimes heretofore denominated a capital felony. In this respect,
my views are in full accord with those expressed in the dissenting
opinion of Justices Jacobs and Hall in *State v. Forcella, supra.*

The conclusions I reach are these: Under *Witherspoon,* the ver-
dicts of guilty of murder in the first degree are not disturbed. Under
*Jackson,* the death penalty, under our present statutes, is invalidated.
Under our statutes, the punishment for murder in the first degree is
either death or life imprisonment. Upon invalidation of the death
penalty, the only permissible punishment is life imprisonment. Con-
sequently, my vote is to vacate the death sentences and to remand
the case to the superior court for the pronouncement as to each de-
fendant of a judgment of life imprisonment.

The foregoing opinion was written prior to the filing on No-
vember 26, 1968, of the opinions in the split decision (two to one)
of a panel of the Court of Appeals for the Fourth Circuit in *Alford
v. North Carolina,* 405 F. 2d 340 (4th Cir. 1968). Cf. *Townes v. Pey-
ton,* 404 F. 2d 456 (4th Cir. 1968).

Alford was not confronted with the necessity (1) of pleading
guilty to murder in the first degree and receiving a sentence of life
imprisonment, or (2) of pleading not guilty and thereby risking
conviction by the jury, without recommendation of life imprison-
cent, and *a death sentence.* The State did not require Alford to
tender a plea of guilty of murder in the first degree in order to avoid
the possibility of a death sentence. The State accepted his plea of
guilty of murder in the second degree, for which the maximum pun-
ishment is imprisonment for thirty years; and, by defendant's tender
and the State's acceptance of this plea to an included lesser degree
of unlawful homicide, the defendant avoided the possibility of a
sentence of life imprisonment. In my opinion, *Jackson* applies when,
but only when, a plea of guilty of murder in the first degree is ex-
acted as the only means by which a defendant may avoid the pos-
sibility of *the death penalty.*

I disagree sharply with the idea that a defendant, who is charged with murder as provided in G.S. 15-144 and is represented by counsel, acts under coercion when, on account of the weight or strength of the evidence tending to establish his guilt, he pleads guilty to murder in the second degree or to manslaughter, voluntary or involuntary. Nor, under like circumstances, do I think a defendant charged with rape acts under coercion when he pleads guilty to an assault with intent to commit rape or to an assault on a female by a male person over the age of eighteen years. Nor, under like circumstances, do I think a person acts under coercion when, charged with burglary in the first degree, arson, or other felony, he pleads guilty to "a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime." G.S. 15-170.. Nor, under like circumstances, do I think a person acts under coercion when, charged with a felony, he pleads guilty to an included misdemeanor, *e.g.*, when indicted for larceny of personal property of the value of more than $200.00, a felony, he pleads guilty to larceny of personal property of the value of $200.00 or less, a misdemeanor.

True, apart from *Jackson,* a defendant's plea of guilty to any criminal offense must be vacated if in fact it is not made voluntarily and understandingly. However, when a defendant elects to tender a plea of guilty to an included crime of less degree, both he and his counsel *necessarily take into consideration* the evidence of the State, the evidence available to the defendant, and all other factors pertinent to the advisability of tendering such plea, *including the possibility of conviction by the jury of the crime charged, or of a more serious included lesser degree thereof, and the risk of greater punishment pursuant to such conviction.*

SHARP, J., joins in this opinion.