## STATE v. VICK.

(Filed March 24, 1903.)

1. JURY—*Juror—Competency.*

Where a juror in a capital case states that he is opposed to capital punishment and has religious scruples against acting as a juror therein, the trial court should excuse him.

2. JURY—*Juror—Competency—Challenges.*

The trial judge may excuse a juror, before the jury is empanneled, although the solicitor has passed him to the prisoner and has not challenged him for cause.

INDICTMENT against Fred Vick, heard by Judge *W. S. O'B. Robinson* and a jury, at ————— Term, 1902, of the Superior Court of WAYNE County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer,* Attorney General for the State.
*W. C. Munroe,* for the defendant.

MONTGOMERY, J. The prisoner was convicted of a capital felony—rape. The only question brought up by the appeal for decision relates to the competency of one of the jurors.

It appears from the record that the juror J. B. Cox, one of the special venire, had been asked by the Solicitor for the State whether he had formed and expressed the opinion that the prisoner was not guilty, and was passed to the prisoner. The juror then of his own accord stated to the Court that he did not think he was competent to sit upon the case, for the reason that he was opposed to capital punishment; that he had religious scruples against serving as a juror in a capital case that it was contrary to the doctrine and rules of the religious denomination, of which he was a member, for any of its members to act as jurors in capital cases; that his own opposition to and scruples against, and the doctrines and rules of his church against any of its members acting, as jurors in capital cases, were founded upon opposition to capital punishment solely. His Honor, against the protest of the prisoner, decided as a matter of law that the juror J. B. Cox was not a competent juror, and ordered him to stand aside. The prisoner excepted. He exhausted all his challenges and was compelled to accept a juror to whom he objected.

It is ordained by Section 13, Article 1, of the Constitution that "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The legislature may however provide other means of trial for petty misdemeanors with the right of appeal." Good and lawful men within the meaning of the Constitutional provision are such as have been found by the commissioners of the several Counties to have paid tax for the preceding year, and are of good moral character and sufficient intelligence. The Code, Sec. 1722. Of course that statutory provision has reference to the qualifications of jurors in the general sense. It cannot mean that every person who has paid his tax for the preceding year and is of good moral character and sufficient intelligence can be a competent juror

in the trial of each and every particular action. If that could be so, then kinship, interest, partiality, prejudice, nonresidence, etc., would not disqualify a man for jury service, provided he possessed the statutory qualifications. The great object of trial by jury is to secure a fair and impartial trial, and to exclude the classes above referred to from jury service in particular cases a system of challenges for principal cause or to favor has grown up. The matters which constitute challenges are not prescribed by statute in our State, except in one instance, and that is the provision of Section 1728 of The Code: "If any of the jurors drawn have a suit pending and at issue in the Superior Court, the scrolls with their names must be returned into partition number 1 of the Jury box." By our law, the competency or incompetency of jurors is left to the decision of the courts. Under Section 1199 of The Code it is provided among other things that "in all trials, whether for capital or inferior offences, the defendant may have the aid and assistance of counsel in making challenges to the jury, and the judge or other presiding officer of the court shall decide all questions as to the competency of jurors." And in Section 405 of The Code, amongst other things, it is declared that the judge or other presiding officer of the court shall decide all questions as to the competency of jurors in both civil and criminal actions. The rulings of law by the judges of the Superior Courts, however, on challenges for cause are subject to review by this court. Their findings of fact, though, are conclusive; so also are their findings of fact and law upon challenges to *the favor*.

In *State v. Green,* 95 N. C., 611, Ashe, J., for the court said: "But the challenge in these cases (*State v. Jones,* 80 N. C., 415; *State v. Boone,* 80 N. C., 415) was not strictly a challenge for cause but a challenge to the favor, when the party has no particular cause to challenge but objects that the juror is not indifferent on account of some suspicion of par-

tiality, prejudice or the like.   In such cases, the validity of the objection was left at common law to the determination of triers whose office was to try whether the juror was favorable or unfavorable.   The method of which proceeding was if the first man called be challenged, two indifferent persons named by the court constituted the triers; and if they try one man and find him indifferent, he shall be sworn; and then he and the two triers shall try the next, and when another is found indifferent and sworn, the two triers shall be superseded and the two sworn on the jury shall try the next.   3 Blk. Com., 363.   Their finding was conclusive.   But by statute in this State, the court is constituted the trier.   The Code, Sections 405 and 1199.   And where the challenge, as in this, is to the favor, its determination is not reviewable." *State v. Kilgore,* 93 N. C., 533."

In the case before us, the fact that the religious denomination, of which the juror was a member, opposed capital punishment would not be sufficient of itself to disqualify the juror if he himself did not participate in that feeling of opposition.   But he stated that he, as an individual opposed capital punishment, and that he had religious scruples against acting as a juror in capital cases.

Whether the juror's scruples were the subject for challenge for cause or a challenge to the favor, it is unnecessary to decide, although in the case of *State v. Bowman,* 80 N. C., 432, the same matter seems to be treated as one of challenge to the favor.   That case is decisive of this, and is against the prisoner's contention.   Judge Ashe for the court said, there: "A juror was called who stated that he had conscientious scruples against capital punishment . . . . but if the evidence satisfied him beyond a reasonable doubt that the prisoner was guilty, he could bring in a verdict of guilty, yet it would hurt and do violence to his conscience.   He was challenged for cause by the State, the challenge was allowed

and the prisoner excepted. We think there was no error in allowing the challenge, for the juror was clearly exceptionable. It is the object of the law and the duty of the court to see that the prisoner has a fair trial, and at the same time should guard the interest of the public; and to that end the jury empaneled to pass upon the issue between the prisoner and the State should be impartial and competent. A man who has conscientious scruples against capital punishment, no matter how much disposed to discharge his duty, would be an unsafe juror because he would naturally be influenced by his prejudices and go into the jury box with such a bias in favor of the prisoner as would render him incompetent to do justice to the State. Therefore he has been held to be an incompetent juror. *People v. Daman,* 13 Wend., 351; *Com. v. Fisher,* 17 Serg. & Rawle, 155."

The same doctrine is the general doctrine laid down by the courts in this country: "Though no such ground of challenge is to be found stated in the *English* cases, in the United States since the early part of the nineteenth century, the fact that one has conscientious scruples against the infliction of capital punishment has been regarded as disqualifications furnishing ground for challenge by the prosecution on a trial for offenses which may be punished by death." Am. & Eng. Enc. of Law, Vol. 17, p. 1134.

It makes no difference that the solicitor for the State had passed the juror to the prisoner. The jury had not been empaneled. In *State v. Adair,* 66 N..C., 298, it appeared that after the jury was completed and accepted by the prisoner and sworn, but before they were empaneled, the court was informed that one of the jurors was related to two of the prisoners, which fact was not known when the jurors were sworn. The court said, there, that as the jury was not empaneled and charged with the case, it was within the discretion of his Honor to allow the State the benefit of a challenge for

cause, so as to secure a jury indifferent as between the State and the prisoners.    To the same effect, *State v. Boone,* 80 N. C., 461; *State v. Vann,* 82 N. C., 631; *State v. Fuller,* 114 N. C., 885.

It was not necessary for the State to have challenged the juror for cause.    In *State v. Jones,* 80 N. C., 415, this court said:    "The juror stated that he had formed and expressed the opinion that the prisoner was not guilty.    He was therefore not an impartial juror, and, without a challenge by the State, it was the right and duty of the court to stand aside such a juror at any time before the jury were empaneled and charged with the prisoner."    In that case the jury had been passed to the prisoner.

In the light of these decisions, it is immaterial that the juror voluntarily made his statement.    *People v. Daman,* 13 Wend., 351.

No Error.