## STATE v. G. W. CRAIG.

(Filed 20 November, 1918.)

**1. Criminal Law—Verdict—Judgment.**

Where the jury, properly drawn and empaneled, have rendered a verdict that the defendant is not guilty of the crime for which he was tried, or which, by fair intendment, has that significance, it should be received by the court and recorded as rendered, and as a rule it must be acted upon according to its true intent and meaning.

**2. Same—Alteration—Appeal and Error.**

The verdict of the jury in the defendant's favor, in a criminal action, may not ordinarily be questioned on appeal, or set aside, or materially altered by the trial judge, to the defendant's prejudice, or by the jury itself, after it has been finally received and recorded.

**3. Criminal Law—Verdict—Fraud—Jeopardy—Judgments.**

The only exception recognized in the courts of this State to the rule that the trial judge should receive and act upon the verdict of a jury in a criminal action, as the jury renders it, is that for fraud in the trial, or procuring of the verdict on the part of the defendant or those acting for him, and to the extent that makes it manifest that, in fact and in truth, there has been no real trial and the defendant was not in jeopardy by reason of it.

**4. Statutes—Criminal Law—Offense Specified—General Description.**

Where particular and specific words or acts, the subject of a statute, are followed by general words, the latter must, as a rule, and by proper interpretation, be confined to acts and things of the same kind.

**5. Criminal Law—Criminal Insane—Offense Specified—General Description —Insanity—Acquittal—Judicial Investigation.**

Our statutes establishing a department for the criminal insane in the penitentiary, and prescribing the method by which the trial judge may detain the prisoner found not guilty of a criminal offense by the jury on the ground of insanity or want of mental capacity, specifies a high degree of crime, such as murder, rape, and the like, indicating a class of criminals who may be dangerous to the public or individuals, if left at ward, and by the addition thereto of the words, "or other crimes," did not include within their intent and meaning the offense of resisting an officer when arrested, especially, as in this case, the resistance was only by words, in the nature of a threat that the officer could not take him alive. Revisal, secs. 4612-4622, inclusive.

**6. Criminal Law—Insanity—Criminal Insane—Acquittal—Judicial Investigation—Constitutional Law.**

Revisal, secs. 4612-4622, permitting the trial judge to make investigation for the purpose of deciding upon committing the prisoner, relieved by the verdict of the jury from sentence for a criminal offense, on the ground of insanity or mental incapacity, to the department in the penitentiary for the criminal insane, is within the Legislature's constitutional authority, but, being a restraint of his liberty within the constitutional guarantee for his protection, should be strictly construed in his favor.

**7. Statutes—Penal Statutes— Criminal Law— Insanity— Acquittal— Detention of Prisoner—Judicial Investigation.**

Our statutes giving to the trial judge the authority to detain the prisoner found not guilty of a criminal offense because of insanity or mental incapacity, and to make an investigation upon the question of committing him to the department of the criminal insane, is penal in its character. Revisal, secs. 4612-4622.

**8. Criminal Law—Resisting Arrest—Insanity—Acquittal—Discharge—Judicial Investigation—Criminal Insane—Statutes.**

Where the offense charged is resisting arrest. and the jury has found that the prisoner "did not have mental capacity to commit it," he should be discharged, and the trial judge is without authority, under our statutes, to detain the prisoner while investigating whether he should be committed to the department in the penitentiary for the criminal insane. Revisal, secs. 4612-4622.

INDICTMENT for resisting an officer, tried before *Shaw, J.,* and a jury, at May Term, 1918, of ROCKINGHAM.

The case on appeal states that the jury returned into open court and announced their verdict of "Not guilty." Thereupon, his Honor inquired whether the verdict was upon the ground that the defendant did not have mental capacity to commit a crime at the date of the alleged crime, and the foreman of the jury answered, "Yes." His Honor then had the following entries made: "Verdict, 'Not guilty,' upon the ground that he had not sufficient mental capacity to commit a crime." Defendant's counsel thereupon moved for his discharge.

Some days thereafter, and on the last day of the term, his Honor announced that he would set aside the verdict rendered by the jury in the case, to which order defendant excepted. His Honor then held defendant to bail for his appearance at the next term of the Criminal Court of Rockingham County, and defendant excepted. The court then set aside verdict and required defendant to give an appearance bond of $50, and defendant excepted. His Honor further made and signed the following order:

"In this case, it appearing that the jury rendered a verdict of 'Not guilty' upon the ground that the defendant at the time of the offense did not have sufficient mental capacity to commit a crime, it is ordered that the Clerk of the Superior Court of Rockingham County, upon due notice to the defendant, make inquiry as to the present mental condition of the defendant and make due report in writing to the next criminal term of this court, reporting also in writing the testimony taken in such inquisition."

Defendant excepted and appealed to Supreme Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*H. R. Scott, P. W. Glidewell, and W. M. Hendren for defendant.*

HOKE, J. When a citizen is put on trial for a crime, and a jury, properly sworn and empaneled, have rendered a verdict of "Not guilty," or verdict which, by fair intendment, has that significance, the defendant is entitled to have the same received and recorded as rendered, and as a rule it must be acted upon according to its true intent and meaning. In this jurisdiction it may not be questioned by appeal, nor can it be set aside or materially altered by the trial judge, to defendant's prejudice, nor by the jury itself, after the same has been finally received and recorded. *S. v. Whisenant,* 149 N. C., 515; *S. v. Savery,* 126 N. C., 1083; *S. v. Arrington,* 7 N. C., 571; Clark's Criminal Procedure, 485; Chitty's Criminal Law, 657; 12 Cyc., 701.

In *S. v. Whisenant, supra,* the principle applicable is stated as follows: "The verdict, then, as stated, amounted, by fair intendment, to a verdict of not guilty. As said in Clark's Criminal Procedure, 486, 'A verdict is not bad for informality or clerical errors in the language of it, if it is such that it can be clearly seen what is intended. It is to have a reasonable intendment and is to receive a reasonable construction, and must not be avoided, except from necessity.' This being a correct interpretation of the verdict as rendered by the jury, it was not within the province or power of the court, after they were discharged, to amend or alter their deliverance, in a matter of substance, to defendant's prejudice." Clark, 487. And our own decisions on both propositions cited from Clark are in substantial accord with the author. *S. v. Arrington,* 7 N. C., 571. In this case it was held, among other things, "That wherever a prisoner, either in terms or effect, is acquitted by the jury, the verdict as returned should be recorded." And *Chief Justice Taylor,* in a concurring opinion, speaking to this question, said: "Some of the harsh rules of the common law in relation to criminal trials have been gradually softened by the improved spirit of the times; and this, among others, is relaxed in modern practice, where the jury bring in a verdict of acquittal. It is considered as bearing too hard on the prisoner, and is seldom practiced. Hawk., ch. 47, secs. 11, 12. I think this course of proceeding is fit to be imitated here, whenever a prisoner, either in terms or effect, is acquitted by the jury, and that in all such cases the verdict should be recorded, although I am persuaded that they were desired to reconsider their verdict in this case with the purest intention and solely with a view that they might correct the mistake they had committed. The verdict first returned ought to have been recorded, and *it ought to be done now, valeat quantum valere potest.* The effect will be the same as if a verdict of acquittal were recorded, but I think it most regular to put upon the record what the jury have found."

The only exception recognized in this jurisdiction is that of fraud in the trial, and procuring of the verdict on the part of the defendant or those acting for him, and to an extent that makes it manifest that in fact and in truth there has been no real trial and defendant was not in jeopardy by reason of it. *S. v. Cale,* 150 N. C., 805-809; *S. v. Moore,* 136 N. C., 581; *S. v. Swepson,* 79 N. C., 632; *Holloran v. State,* 80 Ind., 586; *S. v. Cole,* 48 Mo., 70; 1 Chitty Crim. L., 657.

There is no evidence or claim of fraud in this instance, and the verdict must therefore stand as the true deliverance in the cause.

In *S. v. Haywood,* 94 N. C., 847, the verdict in favor of defendant, which was set aside by the court, was on a preliminary issue, whether the defendant was sane and capable of conducting his defense to the indictment, and not one of acquittal, as in this case. Nor do we find

anything in the record to justify the further detention of defendant as a criminal, nor for an order to make inquiry into his mental condition, with a view of having him confined in the department of the "dangerous insane" in the penitentiary. The verdict of "Not guilty" having been duly rendered, defendant is thereby relieved of any criminal aspect of the charge; and in reference to the order of inquiry into his mental condition, we are of opinion that the law under which his Honor evidently proceeded (chapter 97, sec. 4618, Revisal) does not extend to the charge contained in this bill of indictment or to any charge of like grade. The section in question is a part of subchapter 7, chapter 97, sections 4612-4622, inclusive, establishing a department for the dangerous insane in the penitentiary; and while some portions of this statute seem broad enough to include all cases of persons charged with crime, the particular section involved here is of much more restricted meaning. It provides that when a person is accused of the crime of murder, attempt at murder, rape, assault with intent to commit rape, highway robbery, train wrecking, or other crime, shall be acquitted, upon trial, upon the ground of insanity, or shall be found by the court to be without mental capacity to undertake his defense or to receive sentence after conviction, the court before which such proceedings are had shall detain such person in custody until such inquisition be had in regard to his mental condition, the section then making further provision for the judges to notify certain parties, direct the summoning of witnesses, and himself conducting the inquiry, presently or at a later date. It is a recognized principle of statutory construction that when particular and specific words or acts, the subject of a statute, are followed by general words, the latter must as a rule be confined to acts and things of the same kind. *S. v. Goodrich,* 84 Wis., 359; *Nichols et al. v. State,* 127 Ind., 406; *Ex parte Muckinfuss,* 52 Tex. Civ. App., 467; 2 Lewis' Sutherland Stat. Construction (2d Ed.), sec. 422; 36 Cyc., 1119. As said in the Texas case, *supra,* it is a principle especially applicable to statutes which define and punish crimes, and is imperatively required in reference to the section considered. Our General Assembly clearly has the power to establish rules and regulations for the care and custody of the insane; indeed, it is enjoined upon it here as a constitutional duty, but such regulations must be in reasonable regard for the rights of persons and property. The well considered case of *In re Boyette,* 136 N. C., 415, opinion by our former associate, *Mr. Justice Connor,* is in full approval of the position that an order detaining a citizen as an insane person, in a hospital, asylum, or otherwise, is a restraint of his liberty within the constitutional guarantees for his protection. The statute, therefore, or this portion of it, conferring as it does upon the trial judge the unusual power of detaining a citizen who has been acquitted by the jury, may become highly penal in

character; and, having specifically designated for its operation the crimes of murder, assault with intent to murder, rape, and assault with intent to commit rape, highway robbery, train wrecking, arson, all crimes of higher grade and in themselves importing serious menace to others, in adding thereto the general terms, "or other crimes," by correct interpretation, means and was intended to mean other crimes of like kind and grade, and does not extend to or include crimes like the present, misdemeanors which are not necessarily and inherently vicious or threatening and may be and not infrequently are committed with very little demonstration of force. In this very instance, while the testimony does not accompany the record, the justice's warrant, initiating these proceedings and made a part of the case, charges that the "offense was committed by threats and saying that no officer could take him alive," giving clear indication that no violence had been committed. Undoubtedly, if in the course of this or any other criminal investigation it should be disclosed by the testimony that a defendant's mind had become so far deranged and the insanity had taken such form, as to threaten the safety of his family or friends or neighbors, the magistrate, as a peace officer or under other provisions of the law, could order his present restraint, that proper steps might be taken with a view to his lawful commitment and care, but such conditions are not presented by the record, nor does such power arise under the present section in any charge of this kind, from the mere fact that a jury has acquitted a defendant on the ground "that he did not have sufficient mental capacity to commit a crime."

On the record, we are of opinion that defendant is entitled to an order for his discharge without more, and this will be certified, that the order of inquiry be set aside and defendant's motion for his discharge be allowed him.

Reversed.