STATE OF NORTH CAROLINA v. JOHNNY RUTH

No. 9

(Filed 10 December 1969)

**1. Constitutional Law § 29;    Criminal Law § 135;    Jury § 7— death penalty — exclusion of veniremen opposed to capital punishment**

Under the decision of *Witherspoon v. Illinois,* 391 U.S. 510, a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.

**2. Constitutional Law § 29;    Criminal Law § 135;    Jury § 7— death penalty — exclusion of veniremen opposed to capital punishment**

Judgment of the superior court sentencing defendant to death for first degree murder must be vacated under the decision of *Witherspoon v. Illinois,* 391 U.S. 510, where the trial court allowed the State's challenges for cause to seven prospective jurors who stated simply a general objection to or conscientious scruples against capital punishment, notwithstanding the trial occurred prior to the *Witherspoon* decision, since that decision is fully retroactive.

**3. Constitutional Law § 29;    Criminal Law § 135;    Jury § 7— death sentence vacated under Witherspoon — new trial or resentencing to life imprisonment — State law**

When a sentence of death must be vacated under the *Witherspoon* decision, the question of whether the verdict should be set aside and defendant granted a new trial or whether the case should be remanded to the superior court for imposition of a different sentence upon the verdict rendered by the jury is not determined by the decision in the *Witherspoon* case but by the law of this State.

**4. Constitutional Law § 29;    Criminal Law §§ 126, 137;    Jury § 1— plea of not guilty — necessity for verdict of guilty for imposition of sentence**

Neither the Supreme Court nor the superior court has authority to impose upon any defendant charged with any crime, to which charge he has entered a plea of not guilty, any sentence not supported by a verdict of guilty rendered by a jury properly selected and constituted.

**5. Constitutional Law § 29; Criminal Law § 126; Jury § 7— authority of Supreme Court or superior court to change verdict**

Neither the Supreme Court nor the superior court has authority to change a constitutionally impermissible verdict by adding thereto a provision which, had the jury added it, would have made the verdict constitutionally permissible, but which the jury failed to add, notwithstanding a clear instruction that it might do so.

**6. Criminal Law § 135; Homicide § 31— first degree murder — discretion of jury to "recommend" life imprisonment — sentence by court — G.S. 14-17**

While G.S. 14-17 gives the jury the discretion to "recommend" life imprisonment for first degree murder, it confers no discretionary power upon the superior court, or upon the Supreme Court, to impose a sentence different from that fixed by the jury.

**7. Criminal Law § 135; Homicide § 31— first degree murder — jury verdict — sentence**

The condition which calls into operation the one or the other alternative penalties for first degree murder prescribed by G.S. 14-17 is the verdict of the jury, not the determination of the judge, even though the judge so determines because the Constitution of the United States, as interpreted by the United States Supreme Court, forbids him to impose a sentence pursuant to the verdict.

**8. Criminal Law § 134— conformity of judgment to statute**

A judgment by a court in a criminal case must conform strictly to the statute, and any variation from its provisions, either in the character or the extent of punishment, renders the judgment void.

**9. Criminal Law § 137— authority of court to impose punishment**

No sentence to imprisonment or to any other punishment for a criminal offense can be valid unless supported by either a plea of guilty, a plea of *nolo contendere*, or a verdict of a properly constituted jury.

**10. Constitutional Law § 29; Criminal Law § 135; Jury § 7— death penalty — exclusion of veniremen opposed to capital punishment — new trial**

Where the jury which returned a verdict of guilty of first degree murder without a recommendation that defendant be sentenced to life imprisonment was selected by a method which did not meet the standards set forth in the *Witherspoon* decision, there is no verdict which will support the death sentence or any other sentence or which will support the release of defendant as upon an acquittal of the offense for which he has been indicted, and the case must go back to the superior court for a new trial.

MOORE, J., took no part in the consideration or decision of this case.

BOBBITT, C.J., and SHARP, J., dissenting.

APPEAL by defendant from *Hall, J.,* at the 19 February 1968 Criminal Session of DURHAM.

By an indictment, proper in form, the defendant was charged with the murder of Flossie Evans on 19 October 1967. The defendant being found to be an indigent, Moses C. Burt was appointed as his counsel and represented him at the trial in the superior court. The defendant entered a plea of not guilty. The jury found him guilty of murder in the first degree, making no recommendation as to sentence. Pursuant to the verdict the defendant was sentenced to death by a judgment proper in form.

Notice of appeal to the Supreme Court was given on the day sentence was so imposed. On the same day, the superior court entered its order continuing the appointment of Moses C. Burt as counsel for the defendant for the purposes of the appeal and directing the county to bear the necessary costs of the transcript, the record and the briefs. The defendant was allowed 60 days in which to prepare and serve his statement of the case on appeal.

On 24 March 1969, the appeal not having been perfected and no statement of the case on appeal having been served, the superior court entered a further order discharging Moses C. Burt, directing that he not receive any compensation for services rendered subsequent to the trial in the superior court and appointing Jerry L. Jarvis as counsel for the defendant for the purpose of applying to the Supreme Court for certiorari. The petition for certiorari was allowed 19 May 1969 and the matter was heard in the Supreme Court as a belated appeal on 9 September 1969.

The only assignment of error is to the action of the trial court "in allowing challenges for cause by the State to seven prospective jurors simply because they voiced general objections to the death penalty or expressed conscientious scruples against capital punishment, contrary to the constitutional standards set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968); *State v. Spence and Williams*, 274 N.C. 536 (1968); and *State v. Atkinson*, 275 N.C. 288 (1969)." For this alleged error the defendant, in his brief and oral argument, seeks to have the judgment of the superior court vacated "and the defendant granted a new trial."

Eighty prospective jurors were called and examined. Thirteen, including an alternate juror, were selected. Of the sixty-seven jurors rejected, seven were challenged peremptorily by the State, the defendant not assigning as error the allowance of the seventh peremptory challenge, thirteen were challenged peremptorily by the defendant, one less than the number of peremptory challenges allowed him by law, six were challenged for cause by the defendant, one was

challenged for cause by the State because of his acquaintance with the deceased and his preconceived opinion as to the guilt of the defendant, thirty-three were challenged for cause by the State because of statements of their opposition to capital punishment, conceded by the defendant to be proper grounds for challenge; and the remaining seven were challenged for cause by the State on account of their stated views concerning capital punishment, which the defendant contends were not proper cause for challenge.

While the questions directed to these seven jurors on voir dire and their responses thereto were not identical, the following interrogation of prospective Juror Howell is reasonably typical of their voir dire examinations:

"BY MR. EDWARDS [the solicitor]:

Q. Are you opposed to capital punishment?

A. Yes, sir.

OBJECTION OVERRULED.

Q. Challenge for cause.

"BY THE COURT:

Q. You say you are opposed to it?

A. Yes sir.

Q. You have conscientious scruples against capital punishment?

A. Yes sir.

Q. Challenge sustained.

DEFENDANT EXCEPTS. (Juror is excused)."

The evidence for the State is to the effect that the deceased was killed by a stab wound just below the heart, which severed or punctured the aorta. This wound and many lesser stab wounds were inflicted by the defendant when he entered the home of the grandmother of the deceased after he had been ordered not to do so and there attacked the deceased, who was living in the house. There was evidence of premeditation and deliberation.

*Attorney General Morgan and Deputy Attorney General Moody for the State.*

*Jerry L. Jarvis for defendant.*

LAKE, J.

The defendant concedes that there was no error in sustaining the State's challenges for cause to those jurors who stated upon voir dire examination that they would not return a verdict which would require the death sentence in any case, regardless of the evidence. His sole assignment of error is directed to the allowance of the State's challenges to seven prospective jurors who stated simply a general objection to or conscientious scruples against the infliction of capital punishment. The fact that the questioning of the first group indicated that the solicitor was seeking a jury which would fairly consider the evidence and, in its light, determine whether to render a verdict requiring imposition of the death sentence has no bearing upon the validity of the rulings upon the challenges to the seven.

In fairness to the solicitor and to the learned judge who presided at the trial it should be observed that, at the time of the trial, the following statement by this Court in *State v. Arnold*, 258 N.C. 563, 573, 129 S.E. 2d 229, was regarded, in the courts of this State, as a correct declaration of the law upon the question presented by the defendant's assignments of error:

> "Each defendant assigns as error the court's allowing the State on *voir dire* to challenge for cause a number of jurors on the jury panel on the ground that they had conscientious scruples against the infliction of capital punishment. These assignments of error are overruled, for the simple reason that the court, in its discretion, could allow the State to challenge such jurors for cause for incompetency to serve in the case and sustain the challenge, it appearing that such jurors were disqualified. *S. v. Vick*, 132 N.C. 995, 43 S.E. 626; *S. v. Vann*, 162 N.C. 534, 77 S.E. 295."

[1, 2]    At the time of the defendant's trial in the superior court, there had been no contrary decision by the Supreme Court of the United States with reference to the effect of the Fourteenth Amendment, or any other provision of the Constitution of the United States, upon the question. It was not until three months after the trial of this defendant that the Supreme Court of the United States rendered its decision in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, which, being an interpretation of the Constitution of the United States, is binding upon this Court. There, the Supreme Court of the United States said:

> "The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospec-

tive jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. For the State of Illinois did not stop there, but authorized the prosecution to exclude as well all who said that they were opposed to capital punishment and all who indicated that they had conscientious scruples against inflicting it. * * *

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

The *Witherspoon* decision being declared by the Court, in footnote 22 thereto, to be fully retroactive, we are compelled by it to vacate the judgment of the superior court sentencing the present defendant to death, which we do.

[3] The defendant also asks us in his brief and upon oral argument to set aside the verdict and grant him a new trial. Whether this should be done, or the case should be remanded to the superior court for the imposition of a different sentence upon the verdict rendered by the jury selected in a manner now declared to violate the Constitution of the United States, is not determined by the decision in the *Witherspoon* case but by the law of this State. See *Boulden v. Holman,* 394 U.S. 478, 22 L. Ed. 2d 433, 439, 89 S. Ct. 1138.

In *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593, a judgment imposing a death sentence upon a verdict of guilty of first degree murder without a recommendation that the defendant be sentenced to life imprisonment, which judgment had previously been affirmed by this Court (*State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802), was reconsidered by us pursuant to a directive from the Supreme Court of the United States. That directive required this Court to determine whether the method employed in selecting the jury met the standards set forth in the *Witherspoon* decision, which had been rendered after our affirmance of the judgment imposing the death sentence.

The record in the *Spence* case contained this stipulation: "A total

of 150 veniremen were examined on voir dire; 79 of those examined were successfully challenged for cause by the State because of their stated opposition to capital punishment." Having reconsidered our earlier decision in the light of the *Witherspoon* case, we said:

> "We have concluded the jury which convicted Spence and Williams was not selected according to their constitutional rights as set forth in *Witherspoon.* Although the defendants are indicted for having committed a most horrible crime, they cannot be executed for that crime until a jury, selected in accordance with their constitutional rights, has convicted them. The State has waived neither its right nor its duty to require them to answer the charge of murder in the first degree. To that end we order a new trial."

Thereafter, in *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241, we held that upon a verdict by a jury, properly selected and constituted, that the defendant was guilty of murder in the first degree, which verdict contained no recommendation that his punishment be life imprisonment and which verdict was rendered in a trial free from error, the death sentence may lawfully be imposed and is required by the law of this State.

In the present case, the State contends that the defendant should be executed because he has committed the crime of first degree murder. The correctness of this contention has not been lawfully determined for the reason that, under the rule of the *Witherspoon* case, there has been no verdict by a jury properly selected and constituted. For this reason the defendant contends he is entitled to a new trial. He does not ask this Court to modify the judgment of the superior court so as to impose a different sentence, nor does he ask this Court to remand the case to the superior court for the imposition of a different sentence upon the verdict which has been rendered.

[4]   In any event, neither this Court nor the superior court has authority to impose upon any defendant charged with any crime, to which charge he has entered a plea of not guilty, any sentence not supported by a verdict of guilty rendered by a jury properly selected and constituted. See *State v. Walters,* 208 N.C. 391, 180 S.E. 664. The verdict in the record before us will support no sentence except the death sentence, which sentence cannot be carried out under the rule of the *Witherspoon* case.

[5, 10]   Neither this Court nor the superior court has authority to change a constitutionally impermissible verdict by adding thereto

a provision which, had the jury added it, would have made the verdict constitutionally permissible, but which the jury failed to add, notwithstanding a clear instruction that it might do so. See: *State v. Snipes*, 185 N.C. 743, 117 S.E. 500; *State v. Craig*, 176 N.C. 740, 97 S.E. 400. There is in this case no verdict in the record which will support the sentence imposed (due to the *Witherspoon* case) or any other sentence or which will support the release of the defendant as upon an acquittal of the offense for which he has been indicted.

G.S. 14-17 is plain and explicit in prescribing the sentence to be imposed upon one convicted of murder in the first degree. The sentence must be: (1) Death if the jury does not "at the time of rendering its verdict in open court" recommend imprisonment for life, or (2) imprisonment for life in the State's prison if the jury does so recommend.

**[6, 7]** While the statute uses the word "recommend," it clearly confers no discretionary power upon the superior court, or upon this Court, to impose a sentence different from that fixed by the jury. *State v. Denny*, 249 N.C. 113, 105 S.E. 2d 446; *State v. Carter*, 243 N.C. 106, 89 S.E. 2d 789. Under G.S. 14-17 the court has no more authority to sentence a defendant to imprisonment where the verdict requires the death sentence than it has to sentence him to death where the jury "recommends" life imprisonment. The statute, itself, prescribes the penalty. It does so in the alternative, but the condition which calls into operation the one or the other alternative is the verdict of the jury, not the determination of the judge. It makes no difference that the judge so determines because the Constitution of the United States, as interpreted by the Supreme Court of the United States, forbids him to impose a sentence pursuant to the verdict.

**[8]** "A judgment by a court in a criminal case must conform strictly to the statute, and any variation from its provisions, either in the character or the extent of punishment inflicted, renders the judgment void. A statute which creates an offense and prescribes a special form of punishment excludes any different or additional punishment. Accordingly, imprisonment cannot be imposed under a statute providing for punishment only by a fine." 21 Am. Jur. 2d, Criminal Law, § 535. *Accord: Weems v. United States*, 217 U.S. 349, 382, 54 L. Ed. 793, 30 S. Ct. 544; *In Re Graham*, 138 U.S. 461, 34 L. Ed. 1051, 11 S. Ct. 363; *Pressly v. State*, 114 Tenn. 534, 86 S.W. 378.

**[9, 10]** It is clear that no sentence to imprisonment or to any

other punishment for a criminal offense can be valid unless supported by either a plea of guilty, a plea of nolo contendere, or a verdict of a properly constituted jury. Here, the defendant's plea is "Not guilty." Since there is no verdict in the record which will support a constitutionally permissible sentence, the case must go back to the Superior Court of Durham County for a new trial.

New trial.

MOORE, J., took no part in the consideration or decision of this case.

BOBBITT, C.J., and SHARP, J., dissenting:

All of defendant's assignments of error relate to the court's action in allowing challenges for cause by the State to seven prospective jurors simply because they voiced general objections to the death penalty or expressed conscientious scruples against capital punishment. The Court holds these rulings violate the constitutional standards set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. ed. 2d 776, 88 S. Ct. 1770. We agree.

In *Witherspoon*, Mr. Justice Stewart, expressing the views of five members of the Court, stated: "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." Also, Mr. Justice Stewart stated: "We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In the light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was. . . . It has not been shown that this jury was biased with respect to the petitioner's guilt." Footnote 21 of the majority opinion includes the following: "Nor does the decision of this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction*, as opposed to the *sentence*, in this or any other case." The separate opinion of Mr. Justice Douglas, who considered the decision too narrow, epitomizes the holding of the majority in these words: "Although the Court re-

verses as to penalty, it declines to reverse the verdict of guilt rendered by the same jury."

The clear decision of the majority in *Witherspoon* was (1) that the sentence of death could not be carried out, and (2) that the verdict establishing Witherspoon's guilt was not disturbed. Thus, subject to the limitation that the sentence of death could not be carried out, whether a judgment of imprisonment for life or a term of years should be pronounced on the verdict establishing Witherspoon's guilt or a complete new trial should be ordered became a matter for determination in accordance with Illinois law.

Heretofore, in split decisions, this Court has held, in *State v. Spence*, 274 N.C. 536, 164 S.E. 2d 593, and in *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241, that the same error in selecting the jury which occurred in this case entitled the defendant to a new trial on the issue of his guilt. We dissented in *Spence* and in *Atkinson*. It seems appropriate that we restate breifly the grounds of our dissent.

G.S. 15-162.1, which was in force when defendant was arraigned, tried and convicted, provided that the tender and acceptance of a plea of guilty of murder in the first degree, rape, burglary in the first degree, or arson, had the effect of a verdict of guilty of such crime with recommendation by the jury that the punishment be imprisonment for life in the State's prison; and, in such event, required that the court pronounce a judgment of life imprisonment. If a plea of guilty was tendered by a defendant and accepted by the State, with the approval of the court, the defendant by such plea avoided a jury trial and the possibility of a conviction resulting in a death sentence. G.S. 15-162.1 was repealed March 25, 1969.

It is, and has been, our opinion that, prior to the repeal of G.S. 15-162.1, the death penalty provisions relating to murder in the first degree, rape, burglary in the first degree and arson (G.S. 14-17, G.S. 14-21, G.S. 14-52 and G.S. 14-58, respectively) were invalidated by the decisions of the Supreme Court of the United States in *United States v. Jackson*, 390 U.S. 570, 20 L. ed. 2d 138, 88 S. Ct. 1209 (1968), and in *Pope v. United States*, 392 U.S. 651, 20 L. ed. 2d 1317, 88 S. Ct. 2145 (1968). The reasons for our opinion are set forth fully in the dissenting opinions in *State v. Spence, supra,* and in *State v. Atkinson, supra.* If our view is correct, North Carolina had no death penalty in February, 1968, when Johnny Ruth was convicted of murder in the first degree and sentenced to die.

In *Alford v. State of North Carolina*, 405 F. 2d 340, a panel of the United States Court of Appeals for the Fourth Circuit in a split

decision (two to one) held the *Jackson* and *Pope* decisions invalidated the death penalty provisions of our North Carolina statutes. The Supreme Court of the United States granted *certiorari* to review the *Alford* case and heard oral arguments therein on November 17, 1969. Its decision may determine whether *Jackson* and *Pope* did invalidate the death penalty provisions of our North Carolina statutes *as they existed prior to March 25, 1969.*

Notwithstanding the repeal of G.S. 15-162.1, the uncertainty as to the validity of the death penalty provisions of our North Carolina statutes continues for reasons other than those discussed in *Jackson* and *Pope.* These additional questions may be resolved by the forthcoming decision of the Supreme Court of the United States in the case of *Maxwell v. Bishop,* which was first argued at its Spring Term 1969 and has been set for reargument at its Fall Term 1969. *Maxwell v. Bishop* involves Arkansas statutes containing provisions similar to those in our North Carolina statutes. The Supreme Court in allowing *certiorari* to review the decision of the United States Court of Appeals for the Eighth Circuit (*Maxwell v. Bishop,* 398 F. 2d 138), limited consideration to Questions 2 and 3 of the petition for *certiorari, viz.:*

"2. Whether Arkansas' practice of permitting the trial jury absolute discretion, uncontrolled by standards or directions of any kind, to impose the death penalty violates the Due Process Clause of the Fourteenth Amendment?

"3. Whether Arkansas' single-verdict procedure, which requires the jury to determine guilt and punishment simultaneously and a defendant to choose between presenting mitigating evidence on the punishment issue or maintaining his privilege against self-incrimination on the guilt issue, violates the Fifth and Fourteenth Amendments?"

It seems probable that the decision in *Maxwell v. Bishop* will settle existing uncertainty as to the validity of our *present statutory provisions* relating to capital punishment.

If it should be determined that the majority of this Court are correct in their view that the death penalty provisions of our statutes were and are valid, we would join in the decision that the verdict and judgment should be vacated and the cause remanded for a new trial.

On the other hand, if it should be determined by the Supreme Court of the United States that the death penalty provisions of our statutes, as of the date defendant was arraigned, tried and convicted,

were invalid, either under the decisions in *Jackson* and *Pope* or on grounds that may be decided in *Maxwell v. Bishop,* we would not disturb the verdict but would remand the cause for pronouncement of a judgment imposing a sentence of life imprisonment.

Our statutes provide only two possible judgments, death or life imprisonment, where a defendant is convicted of murder in the first degree, rape, burglary in the first degree, or arson. If the death penalty provisions are invalidated, the only permissible punishment upon conviction for these crimes is life imprisonment. We are not at all impressed with the suggestion that, even if the death penalty provisions are invalidated, no judgment of imprisonment for life can be pronounced unless the jury, at the time of rendering its verdict in open court, recommends that "the punishment shall be imprisonment for life in the State's prison." If the alternative of death is invalidated, there would be no occasion for the jury to do otherwise than render a verdict as to defendant's guilt. The jury would have no discretion as to whether the punishment should be death or life imprisonment. Any recommendation the jury might make in respect of punishment would be inappropriate and without legal significance. Upon conviction, the court would impose the only legally permissible punishment, being the statutory punishment most favorable to the defendant, that is, a judgment of imprisonment for life.

If the death penalty provisions are invalidated, this case should be remanded for the pronouncement of a judgment of life imprisonment. Where there is no error in the trial of defendant in respect of guilt, a new trial in respect of defendant's guilt should not be ordered when upon such new trial the State could not under any circumstances obtain a verdict that would result in the pronouncement of a valid death sentence.

The retrial of a capital case, which necessarily requires the expenditure of time and money and imposes great stress and strain upon all who are involved in it, should not be undertaken in the present uncertainty concerning these issues of life and death. Nothing will be lost by deferring our decision in this case until the Supreme Court of the United States has spoken definitively on the crucial questions now before it for decision. We favor that course.