STATE OF NORTH CAROLINA v. TYRONE WILLIAM BLACKWELL

No. 38

(Filed 12 June 1970)

**1. Constitutional Law § 29; Criminal Law § 135; Homicide § 31— due process — capital case — jury determination of guilt and punishment**

It is not a denial of due process that G.S. 14-21 allows the same jury in a capital case to determine a defendant's guilt or innocence and to recommend life imprisonment upon a verdict of guilty.

**2. Criminal Law § 66— in-court identification of defendant — identification based on observation at crime scene**

The record in a rape prosecution clearly establishes that the prosecuting witness' in-court identification of the defendant as one of her assailants, which identification was made without objection by defendant, was based upon her observation of the defendant immediately before and during the time the rape was committed; and consequently the in-court identification was admissible notwithstanding defendant's contention that the in-court identification was tainted by an allegedly illegal identification of defendant at the police station.

**3. Criminal Law § 162— objection to evidence — motion to strike**

When a specific question is asked, objection should be made before the witness has time to answer; however, when admissibility is not indicated by the question and only becomes apparent by the content of the answer,

objection should be made immediately by a motion to strike the answer or the objectionable part of it.

**4. Criminal Law § 162— incompetent testimony — waiver of objection**

Failure to object in apt time to incompetent testimony results in a waiver of objection unless the evidence is forbidden by statute or results from questions asked by a trial judge or a juror.

**5. Criminal Law § 91— adversary nature of criminal trials**

Under our system of jurisprudence the trial of criminal cases is adversary in nature.

**6. Criminal Law § 146— nature of appellate review — defendant restricted to theory of trial**

An accused, represented by counsel, will not be allowed to choose one theory of trial and, upon an adverse verdict, call upon the appellate court to grant relief on the ground that the presiding judge should have intervened and guided his defense to another theory.

**7. Criminal Law § 161— broadside assignment of error**

An assignment of error which attempts to present several questions of law is broadside and ineffective. Rule of Practice in the Supreme Court No. 19(3).

**8. Criminal Law § 176— review of nonsuit motion — challenge to evidence**

In reviewing an exception to the denial of a motion for nonsuit, the Supreme Court in this case considered all evidence admitted at the trial, whether competent or incompetent; consequently, the nonsuit motion did not properly bring challenged testimony before the Court for review.

**9. Criminal Law § 66— identification of defendant — voir dire — necessity for objection**

In proper cases the *voir dire* procedure may be invoked concerning identification testimony; however, the defendant must at least enter a general objection before such procedure is invoked.

**10. Criminal Law § 66— photographic identification of defendant — contention of suggestiveness**

The procedure whereby a rape victim identified her assailants from 15 or 20 photographs supplied by police officers, *held* free from any suggestiveness that might have given rise to a substantial likelihood of misidentification, and there is no merit to the defendant's contention that the victim's subsequent in-court identification of him as one of the assailants was tainted by the identification from the photographs.

**11. Criminal Law § 86— cross-examination of defendant — prior crimes — discretion of court**

When a defendant voluntarily becomes a witness in his own behalf, he may be cross-examined with respect to previous convictions of crime; whether the cross-examination goes too far or is unfair is a matter largely within the discretion of the trial judge.

**12. Criminal Law § 86—    cross-examination    of    defendant — prior crimes — absence of prejudice**

When the defendant took the stand in his own behalf in a rape prosecution, it was competent for the solicitor to cross-examine the defendant about his convictions in New York; and defendant's answers that he had been convicted of "fighting the girl that I have the kids by" and also had been charged with nonsupport were not prejudicial where he had previously admitted, without objection, that he had been convicted of malicious injury to property, assault with a deadly weapon, public drunkenness, disorderly conduct, assault, nonsupport, violation of prohibition laws, and escape.

SHARP, J., concurs in result.

APPEAL by defendant from *Seay, J.,* at 3 November 1969 Criminal Session of FORSYTH Superior Court.

Defendant was tried on a bill of indictment charging him with the rape of Fannie P. Dillard on or about 5 September 1969.

The evidence pertinent to decision in this case is narrated below.

Fannie P. Dillard, the prosecuting witness, testified that on the night of 4 September 1969 she left her home at a late hour in order to purchase a sandwich and a drink of wine. The store where she intended to purchase the sandwich was closed and she decided to go to a "drink house" to get a drink of wine, but upon arriving she found it to be closed for the night. A man was sitting on the porch and upon her promise to pay him one dollar so that he could buy a drink of gin for himself, he escorted her to another "drink house." He left after she paid him the one dollar. When the prosecuting witness entered the establishment, she noticed a clock which indicated that the time was 12:06 A.M. She there purchased two 50¢ drinks of wine. She testified, "And when I got up to leave my legs were wobbly and I staggered and I said out loud, 'Oh, I wish Sonny was here to walk me home . . . because I am afraid the police will get me.' . . . After I made that statement Tyrone Blackwell, that I did not know but I have since learned, said, 'Lady, I will walk you home.'" The witness thereupon, without objection on the part of counsel for defendant, identified defendant Tyrone Blackwell as being one of the persons who raped her. She said that she accepted his offer to walk her home and that when they left the drink house "we went on out the door and we started across the porch and when we started down the stairs he reached to embrace me around my waist and I did likewise. And I said jokingly to him, "I will give you ten dollars to walk me home'; that I only lived three blocks,

on the corner of Chestnut and Seventh. And when I said that, Ty-
rone said back to me, 'Baby, I will walk you home for nothing.'"
Defendant convinced her that they should detour through a housing
project called "Patterson Court", and as they proceeded through
Patterson Court four men emerged from a vacant lot and came to-
ward them. She was surrounded by the men, and defendant and an-
other man drug her to an old shed where defendant first raped her
and she was then raped by two other men. She identified one Jesse
Williams as being the second man who raped her and testified that
Williams struck her in the face several times. After the third man
raped her, they all ran. She never identified the third man. She then
found her way out of the shed and was walking down a driveway
when another unidentified man grabbed her. She was then close to
her house and began to call for help and to struggle with her assail-
ant. A neighbor, one Mozelle Booker, summoned two men to her aid
and the unidentified assailant fled. She was taken to a hospital where
she was admitted for emergency and further treatment.

Concerning her ability to observe the assailants, she said:

"It was not dark. There was plenty of light coming over that
hedge wall. I could see them very well when they got on me.
The light was coming from that street light direct opposite the
driveway. I would say it is almost seventy-five feet (from the
shed to the street) but there was plenty of light coming back
up there."

On cross-examination by defense counsel, prosecuting witness
was questioned as to how she identified the men who raped her.
She testified:

MR. HAYES:   Did you know Tyrone — Tyrone Blackwell?

A.   No, sir. I did not know him.

Q.   Under what circumstances did you identify him?

A.   I picked his picture.

Q.   Where?

A.   I picked his picture in the sheriff's office — no, I picked
his picture at my home. Detective Koontz brought pictures out
to my bedroom and I picked his picture there.

Q.   These pictures — were there more than one?

A.   There was a whole lot of pictures.

Q.   Of him?

A.   I don't know if more than one was of him or not but

there was a whole lot of pictures. They won't tell you anything. They just give you pictures to look at.

Q. And after you picked his picture did you later on pick him out of a lineup or anything of that sort?

A. No, sir.

Q. Did you later on see him?

A. Yes sir. I saw him in the detective's office.

Q. After you had picked his picture?

A. After I had picked his picture and he had come in, I saw him in the detective's office.

Q. What process was undertaken in connection with identifying him there?

A. Well, I don't know what they said to him before they sent out for me but when I went in they asked him had he ever seen me before and they talked to me and they told him to talk to me. And we talked to each other and then they took me out and they asked me if he was the man. They told me if he was the man to tell them — if he wasn't the man to say No; if he was the man to tell them.

Q. He told you he had never seen you before, didn't he?

MR. YOKLEY: OBJECTION, your Honor.

THE COURT: SUSTAINED.          EXCEPTION NO. 4.

Q. Well, was he instructed there in the detective's office to hug you?

A. Yes, I asked them to ask him to embrace me around my waist.

Q. What was that for?

A. That was to see how near I come to his shoulder.

Q. Well, you could tell how near you came to his shoulder without embracing him, couldn't you?

A. I wanted proof.

Q. You could have stood beside him, couldn't you?

A. I perhaps could have but it was my privilege to ask and be very careful.

Q. For an embrace?

A. Yes.

. . . .

"(I saw the defendant Blackwell at the Winston-Salem Police Department after I had identified his photograph) and I noticed he was bald headed. He had cut and shaved his hair off, and he had a white earring in his ear. (His hair was not like that on the night of September 4, 1969) no, sir."

The State also offered Detective Sergeant Koontz of the Winston-Salem Police Department, who testified in corroboration by reading to the jury a statement made by Fannie Dillard.

Defendant offered evidence in the nature of an alibi, and testified in his own behalf. He stated that he had never seen the prosecuting witness.

The jury returned a verdict of guilty of rape with recommendation that punishment be imprisonment for life in the State's prison. From judgment entered upon the verdict defendant appealed to this Court pursuant to G.S. 7A-27(a).

*Attorney General Morgan and Deputy Attorney General Bullock for the State.*

*James M. Hayes, Jr., and W. Warren Sparrow for defendant.*

BRANCH, J.

[1] Defendant first contends that he is deprived of due process because the provisions of G.S. 14-21 allowed the same jury in this capital case to determine his innocence or guilt and to recommend imprisonment for life upon a verdict of guilty.

Defendant correctly concedes that this argument is contrary to North Carolina authority. We adhere to the decisions of this Court. *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886; *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885; *State v. Ruth,* 276 N.C. 36, 170 S.E. 2d 897; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593.

[2] Defendant also assigns as error the failure of the trial court to grant his motion for judgment as of nonsuit. His motion is founded on the contention that the vital in-court identification by the prosecuting witness was tainted by illegal out-of-court identification, thereby making all testimony relative to identification inadmissible.

Defendant's counsel made no objection to the in-court identification by the prosecuting witness, nor did he move to strike the testimony concerning the in-court identification. On cross-examination

he elicited testimony concerning identification of defendant by photograph and the testimony concerning identification of defendant by a confrontation in the police station.

**[3]** When a specific question is asked, objection should be made before the witness has time to answer. However, when admissibility is not indicated by the question and only becomes apparent by the content of the answer, objection should be made immediately by a motion to strike the answer, or the objectionable part of it. Stansbury, North Carolina Evidence 2d, § 27, at 51; *State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599; *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341.

**[4]** Failure to object in apt time to incompetent testimony results in a waiver of objection so that admission of the evidence will not be reviewed on appeal unless the evidence is forbidden by statute or results from questions asked by the trial judge or a juror. *State v. McKethan, supra; State v. Battle, supra; State v. Warren,* 236 N.C. 358, 72 S.E. 2d 763; *State v. Merrick,* 172 N.C. 870, 90 S.E. 257.

It is apparent that defendant's able and experienced trial lawyer chose to waive the right to interpose objection for the purpose of high-lighting and accentuating his skillful attack by cross-examination on the veracity and credibility of the prosecuting witness' testimony.

**[5, 6]** Both this Court and the United States Supreme Court recognize that under our system of jurisprudence the trial of criminal cases is adversary in nature. To hold that an accused, represented by counsel, may choose one theory of trial and, upon an adverse verdict, call upon the appellate court to grant relief on the ground that the presiding judge should have intervened and guided his defense to another theory, would destroy the adversary system of trial and further tilt the scales of justice in favor of the criminal by prolonging ad infinitum the pronouncement of judgment in criminal cases.

The exceptions upon which this assignment of error is based are Exceptions Nos. 4, 6, 7 and 9. Exception 4 relates to a ruling on evidence when prosecuting witness was under cross-examination. She had testified concerning the identity of defendant at the police station. She was asked:

Q.   He told you he had never seen you before, didn't he?

MR. YOKLEY:   OBJECTION, your Honor.

THE COURT:   SUSTAINED.        EXCEPTION NO. 4.

**[7]** Exception No. 6 concerns a question on direct examination relative to identification of defendant from photographs. The record shows:

> Q. At that time when you selected those photographs did you know the photographs matched the names that you had given Officer Koontz?

> MR. HAYES: OBJECTION.

> THE COURT: OVERRULED.        EXCEPTION NO. 5.

> A. No, sir.

Exceptions 7 and 9 relate to denial of defendant's motion for nonsuit at the close of the State's evidence and at the close of all the evidence. This assignment of error does not comply with our Rules because it attempts to present several different questions of law in one assignment, thereby becoming broadside and ineffective. *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416; *Hines v. Frink and Frink v. Hines*, 257 N.C. 723, 127 S.E. 2d 508; Rule of Practice in the Supreme Court No. 19(3).

**[8]** Further, when this Court passes upon an exception to the trial court's refusal to grant a defendant's motion for judgment as of nonsuit, it must consider all evidence admitted at the trial, whether competent or incompetent. Thus, it is apparent that defendant's motion for judgment as of nonsuit did not challenge the evidence identifying defendant so as to properly bring it before us upon appeal. *State v. Stallings*, 267 N.C. 405, 148 S.E. 2d 252; *State v. Mitchell*, 265 N.C. 584, 144 S.E. 2d 646.

**[9]** In this jurisdiction, when the State offers a confession by a defendant, and the defendant objects, the proper and better procedure requires the trial judge to excuse the jury and in its absence hear evidence, find facts, and thereupon determine the admissibility of the evidence. *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581; *State v. Vickers*, 274 N.C. 311, 311, S.E. 2d 481; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1. However, such evidence is not necessarily rendered incompetent by failure to hold a voir dire hearing. *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353. In proper cases the voir dire procedure may be invoked concerning identification testimony; however, defendant cannot challenge an in-court identification so as to obtain a voir dire hearing, and a ruling on the offered testimony on the basis that it was "tainted" by prior photographic identification procedures, a "line-up", or other in-custody confrontation without, at least, a general objection. This Court still adheres to the rule requiring at least a general objection by defendant before the voir dire

procedure is invoked. *State v. Vickers, supra.* See also: *Woody v. United States,* 379 F. 2d 130 (D.C. Cir. 1967); *Morris v. Boles,* 286 F 2d 395 (4th Cir. 1967).

The Rules of the Supreme Court have been dictated by experience and stem from a desire to expedite business. They are mandatory and will be enforced. However, because of the seriousness of the charge and the severity of the punishment necessarily imposed upon the return of the verdict of guilty in this case, we have further considered this record.

**[10]** We first consider defendant's contention that the pretrial identification of defendant by photograph was improper and tainted the in-court identification of defendant.

This identification by photograph was made before any personal confrontation between the prosecuting witness and defendant, before he was served with warrant, and apparently before defendant was in custody. The prosecuting witness had been given the names of defendants by some person and she had in turn given their names to the police. The names furnished were not names of persons known to her. Thereafter, Officer Koontz presented her with fifteen or twenty photographs to examine in an attempt to identify her assailants. She picked defendants' photographs without any information as to which photograph was a likeness of each defendant. She was then told that she had chosen the photographs of the men whose names she had furnished to the police. In connection with this identification process, the prosecuting witness testified: ". . . there was a whole lot of pictures. They won't tell you anything. They just give you pictures to look at." She selected this defendant's photograph from the group as being one of the men who raped her.

In *Simmons v. United States,* 390 U.S. 377, 19 L. ed 2d 1247, 88 S. Ct. 967, the United States Supreme Court stated:

"We are unwilling to prohibit its employment (initial identification by photograph), either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ."

This record does not show that the procedure used in identifying defendant by photograph was so suggestive "as to give rise to a very

substantial likelihood of irreparable misidentification." The use of the photographs was proper and did not taint the in-court identification.

We are well aware of the rules adopted by the cases of *United States v. Wade,* 388 U.S. 218, 18 L. ed 2d 1149, 87 S. Ct. 1926; *Gilbert v. California,* 388 U.S. 263, 18 L. ed 2d 1178, 87 S. Ct. 1951; and *Stovall v. Denno,* 388 U.S. 293, 18 L. ed 2d 1199, 87 S. Ct. 1967, which hold that in cases of in-custody identification where there was a "line-up" or a presentation of the suspect alone to the witness, the suspect has the constitutional right to have counsel present, and when counsel is not present, testimony of witnesses' identification is inadmissible and renders inadmissible any in-court identification of the suspect unless it is first determined that the in-court identification is of independent origin and is untainted by the illegal line-up or other in-custody confrontation.

The instant case is distinguishable from *Wade v. United States, supra,* and *Gilbert v. California, supra.* In *Wade,* the defendant's counsel moved to strike the courtroom identification after the confrontation testimony was elicited on cross-examination. In *Gilbert,* defendant's counsel moved, in the absence of the jury, to strike as soon as the in-court testimony was offered. In the instant case no such motion was ever made. In *United States v. Wade, supra,* it is stated:

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L. ed 2d 441, 445, 84 S. Ct. 407, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' * * * Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

In the instant case defendant had ample opportunity to observe

defendant; there was no discrepancy between defendant's actual description and the pre-lineup description; there was no identification, prior to the in-custody confrontation, of another person; there was an identification by picture of defendant prior to the in-custody confrontation; there was no failure to identify defendant on a prior occasion; and the in-custody identification was made within five or six days of the alleged criminal act.

[2]    We think this record clearly establishes that the in-court identification was based upon observation of the suspect immediately before and at the time the crime was committed, so that the in-court identification was of independent origin and untainted by any illegality in the identification by photograph or the in-custody confrontation.

For reasons stated, this assignment of error is overruled.

Defendant assigns as error the admission in evidence of a portion of the solicitor's cross-examination of defendant, as follows:

> Q.    What were you charged and convicted of in New York?
>
> MR. HAYES:    OBJECT, your Honor.
>
> THE COURT:    OVERRULED.        EXCEPTION NO. 8.
>
> A.    I don't mind telling. I was charged and convicted of fighting the girl that I have the kids by. I was charged (also) with nonsupport but she dropped the charges. That is all I remember at the time.

[11, 12]    When a defendant voluntarily becomes a witness in his own behalf, he may be cross-examined with respect to previous convictions of crime. The answers given are conclusive and are admissible as affecting his credibility as a witness. Whether the cross-examination goes too far or is unfair is a matter for determination of the trial judge and rests largely in his sole discretion. *State v. Brown*, 266 N.C. 55, 145 S.E. 2d 297; *State v. Sheffield*, 251 N.C. 309, 111 S.E. 2d 195; *State v. Neal*, 222 N.C. 546, 23 S.E. 2d 911; *State v. Howie*, 213 N.C. 782, 197 S.E. 611; Stansbury, North Carolina Evidence, 2d ed., § 112; *State v. Snipes*, 166 N.C. 440, 81 S.E. 409; and *State v. Little*, 174 N.C. 793, 94 S.E. 97. Here, no abuse of discretion is shown and the question is within the scope of proper cross-examination. Defendant shows no prejudice because he had previously admitted, without objection, that he had been convicted of malicious injury to property, assault with a deadly weapon, public drunkenness, disorderly conduct, assault, nonsupport, violation of prohibition laws, and escape.

This assignment of error is without merit.

In the trial below we find

No error.

SHARP, J., concurs in result.